Loren **SNYDER**, Appellant (Plaintiff),

v.

Ron **LOVERCHECK**, d/b/a **Bear Mountain Land Company**; **O.W. Lovercheck** and **Margaret O. Lovercheck**, husband and wife, Appellees (Defendants).

Loren Snyder, Appellant (Plaintiff),

v.

**Jeremy Hayek** and **ERA The Property Exchange Inc.**, a Wyoming corporation, Appellees (Defendants).

Nos. 98–186, 98–203.

Supreme Court of Wyoming.

Dec. 13, 1999.

Representing Appellant: Micheal K. Shoumaker, Sheridan, Wyoming; and James N. Wolfe, Cheyenne, Wyoming.

Representing Appellee Ron Lovercheck, d/b/a Bear Mountain Land Co.: Nancy D. Freudenthal of Davis & Cannon, Cheyenne, Wyoming.

Representing Appellees O.W. Lovercheck and Margaret O. Lovercheck: John J. Maier of John J. Maier Law Offices, Torrington, Wyoming.

Representing Appellees Jeremy Hayek and ERA The Property Exchange, Inc.: Stephen N. Sherard of Sherard, Sherard & Johnson, Wheatland, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

TAYLOR, Justice, Retired.

Believing himself to have been short-changed in the purchase of a wheat farm, appellant filed suit against the sellers, both real estate agents, and his agent's employer. The district court granted summary judgment in favor of all defendants on all of appellant's claims. The district court awarded costs to all defendants, and awarded attorney's fees to the sellers. Finding the district court's disposition on the motions for summary judgment to be correct, we affirm. However, we remand the award of attorney's fees and costs, and vacate the award of costs for Westlaw research.

## I. ISSUES

Appellant, Loren Snyder (Snyder), presents three issues for review that pertain to the Lovercheck appellees:

A. Did the district court err in granting summary judgment to the Loverchecks?

B. Did the district court err in granting attorney fees to O.W. Lovercheck and Margaret Lovercheck?

C. Did the district court err in granting costs to the Loverchecks?

* Retired November 2, 1998.

The Lovercheck appellees (Ron, O.W., and Margaret Lovercheck) reorganize and re-phrase the issues as:

1. Is there evidence that Ron Lovercheck, or O.W. and Margaret Lovercheck violated any provision of the contract to sell a wheat farm to Loren Snyder?

2. After disclaiming reliance on any representation of the Loverchecks to consummate a sale of the wheat farm, is Snyder barred from claiming justifiable reliance for an action based on negligent misrepresentation or fraudulent misrepresentation?

3. Did the district court err in awarding costs to the sellers and their agent, and fees to the sellers?

As to Jeremy Hayek (Hayek) and ERA The Property Exchange, Inc. (The Property Exchange), Snyder presents two issues for review:

1. Did Jeremy Hayek adequately discharge his obligation as a realtor to Loren Snyder?

2. Is Loren Snyder precluded from his claim against Mr. Hayek's malpractice by ratification and waiver?

Hayek and The Property Exchange respond simply with the question:

Did the district court err in granting the motion for summary judgment of Jeremy Hayek and ERA The Property Exchange, Inc. * * * ?

## II. FACTS

In the fall of 1995, Snyder began searching for a suitable wheat farm. To facilitate his search, he contacted and employed Hayek, a real estate agent employed by The Property Exchange. Hayek contacted Ron Lovercheck of Bear Mountain Land Company (Ron) and discussed O.W. and Margaret Lovercheck's (the Loverchecks) farm in Goshen County. Hayek, Ron, and Snyder toured the farm on November 5, 1995. The crops were planted but not growing when they toured the farm. Ron did mention that there had been some problems with rye in the past,

expressing his belief that the problem was minor. Snyder left the meeting with the understanding that the problem was confined to about 100 of the 1,960 acres.

The following day, Ron, through Hayek, informed Snyder that he had spoken with the former owner of the farm, Ray Headrick (Headrick). Headrick stated that the acreage in question had always produced more wheat than the county average. Headrick also showed Ron the areas where the rye problem was at its worst. Those areas comprised about 100 acres total, and Headrick said that those areas could grow as much as twenty to twenty-five percent rye. Snyder returned to view the property on ten to twelve occasions after the initial tour.

Eventually, Snyder made an offer on the property, and negotiations ensued. On February 16, 1996, Snyder and the Loverchecks entered into a contract for sale of the farm. The contract, drafted by Hayek on Wyoming Real Estate Commission Forms, expressly provided that:

> Purchaser is not relying upon any representations of the Seller or Seller's agents or sub-agents as to any condition which Purchaser deems to be material to Purchaser's decision to purchase this property[.]

This language mirrors the language in a statement of condition of the property completed by the Loverchecks at Snyder's request. The contract also contained an "as is" clause, a merger clause, a liberal inspection clause, and a specific objection procedure. Snyder stated in his deposition that he read parts of the contract, but not the above-quoted language.

The purchase price for the farm was $526,-500.00, and the parties closed on May 10, 1996. According to Snyder, when the crops came up the rye problem was not minor, but rather he estimates that there is rye on 1,800 acres, over a third of which was 100% infected. The affidavit of Snyder's expert stated that the extensive rye problem decreased the value of the farm to only $392,000.00.

Snyder filed suit alleging that the Loverchecks breached the contract for sale, that Ron and the Loverchecks negligently and fraudulently misrepresented the extent of the rye problem, that Ron's fraudulent misrepresentations entitled Snyder to punitive damages, and that Hayek and The Property Exchange breached their duty to delete and/or explain the waiver language quoted above. The district court granted summary judgment in favor of all appellees. The district court awarded the Loverchecks $12,811.09 in attorney's fees and $819.90 in costs, and awarded $8,746.12 in costs to Ron. This timely appeal followed.

## III. STANDARDS OF REVIEW

### A. SUMMARY JUDGMENTS

We will uphold a summary judgment when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c).

> " 'We review a summary judgment in the same light as the district court, using the same materials and following the same standards. We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties.' "

*40 North Corp. v. Morrell,* 964 P.2d 423, 426 (Wyo.1998) (*quoting Raymond v. Steen,* 882 P.2d 852, 856 (Wyo.1994); *Kilmer v. Citicorp Mortg. Inc.,* 860 P.2d 1165, 1167 (Wyo.1993); and *Wagner v. First Wyoming Bank, N.A. Laramie,* 784 P.2d 224, 226 (Wyo.1989)).

We have held that summary judgment is appropriate in cases involving contracts when the language of the agreement is plain and unequivocal. *40 North Corp.,* 964 P.2d at 426; *Flying J, Inc. v. Booth,* 773 P.2d 144, 148 (Wyo.1989). The interpretation of an unambiguous contract is a question of law and, for that reason, summary judgment is appropriate with respect to disputes relating to unambiguous contracts. *40 North Corp.,* 964 P.2d at 426; *Lincoln v. Wackenhut Corp.,* 867 P.2d 701, 703 (Wyo.1994).

### B. ATTORNEY'S FEES AND COSTS

■ We review an award of attorney's fees and costs under an abuse of discretion standard. *Johnston v. Stephenson*, 938 P.2d 861, 862 (Wyo.1997) (attorney's fees); *Coulthard v. Cossairt*, 803 P.2d 86, 93 (Wyo.1990) (costs). "A court abuses its discretion only when it acts in a manner which exceeds the bounds of reason under the circumstances." *Johnston*, 938 P.2d at 862. "The burden is placed upon the party who is attacking the trial court's ruling to establish an abuse of discretion, and the ultimate issue is whether the court could reasonably conclude as it did." *Id.*

## IV. DISCUSSION

### A. SUMMARY JUDGMENT—LOVERCHECK APPELLEES

■ The district court found that neither Ron nor the Loverchecks had breached the contract, and that the punitive damages claim fell with the underlying claims. Snyder makes no argument to this Court that such determinations were erroneous; rather, he relies solely on the contention that the Loverchecks, through Ron, negligently and fraudulently represented to Snyder that the rye problem was minor and manageable. The Loverchecks respond that the disclaimer clause in the contract for sale precludes Snyder from asserting such claims. The district court considered the common elements of both causes of action,[1] and held that Snyder could not assert reliance upon the representations of either Ron or the Loverchecks. We, however, find the two causes of action sufficiently distinguishable to merit independent analysis.

### 1. FRAUDULENT MISREPRESENTATION

The effect of merger and disclaimer clauses on pre-contractual misrepresentations po-

ses significant questions of public policy. There are two prevailing views on the subject. One school of thought focuses on the sanctity of the right to contract, and holds that a party is bound by a specific disclaimer even if the contract was fraudulently obtained. The other school of thought latches on to the age-old proposition that fraud vitiates all contracts, and holds that a party to a contract is not bound by a disclaimer if it was fraudulently obtained. Wyoming subscribes to the latter view.

The Loverchecks ask us to adopt the reasoning of *Danann Realty Corp. v. Harris*, 184 N.Y.S.2d 599, 5 N.Y.2d 317, 157 N.E.2d 597, 598 (1959), where the New York Court of Appeals considered "whether the plaintiff can possibly establish from the facts alleged in the complaint * * * reliance upon the misrepresentations * * *." In *Danann Realty Corp.*, the contract provided:

> "The Purchaser has examined the premises agreed to be sold and is familiar with the physical condition thereof. The Seller has not made and does not make any representations as to the physical condition, rents, leases, *expenses, operation* or any other matter or thing affecting or related to the aforesaid premises, except as herein specifically set forth, and the Purchaser hereby *expressly acknowledges that no such representations have been made, and the Purchaser further acknowledges that it has inspected the premises and agrees to take the premises 'as is'* * * *. It is understood and agreed that all understandings and agreements heretofore had between the parties hereto are merged in this contract, which alone fully and completely expresses their agreement, *and that the same is entered into after full investigation, neither party relying upon any statement or representa-*

---

1. The elements of a negligent misrepresentation claim are: false information supplied in the course of one's business for the guidance of others in their business; failure to exercise reasonable care in obtaining or relating the information; and pecuniary loss resulting from justifiable reliance thereon. *Richey v. Patrick*, 904 P.2d 798, 802 (Wyo.1995); *Duffy v. Brown*, 708 P.2d 433, 437 (Wyo.1985); Restatement of Torts (Second) § 552 at 126–27 (1977).

The elements of a claim for fraud are: "a false representation made by the defendant which is relied upon by the plaintiff to his damage, the asserted false representation must be made to induce action, and the plaintiff must reasonably believe the representation to be true." *Duffy*, 708 P.2d at 437.

*tion*, not embodied in this contract, made by the other. The Purchaser has inspected the buildings standing on said premises and is thoroughly acquainted with their condition."

*Danann Realty Corp.*, 184 N.Y.S.2d 599, 157 N.E.2d at 598 (emphasis in original). That court recognized a difference between a general merger clause and a specific disclaimer of reliance, noting that general merger clauses do not preclude a claim of fraud in the inducement. The New York Court of Appeals went on to say:

> Here, however, plaintiff has in the plainest language announced and stipulated that it is not relying on any representations as to the very matter as to which it now claims it was defrauded. Such a specific disclaimer destroys the allegations in plaintiff's complaint that the agreement was executed in reliance upon these contrary oral representations * * *.

and,

> If the language here used is not sufficient to estop a party from claiming that he entered the contract because of fraudulent representations, then no language can accomplish that purpose. To hold otherwise would be to say that it is impossible for two businessmen dealing at arm's length to agree that the buyer is not buying in reliance on any representations of the seller as to a particular fact.

*Danann Realty Corp.*, 184 N.Y.S.2d 599, 157 N.E.2d at 599, 600.

*Danann Realty Corp.* has been followed by other courts, but has been limited in its applicability to situations where the disclaimer is specifically tailored. In *LaFazia v. Howe*, 575 A.2d 182, 186 (R.I.1990), the Supreme Court of Rhode Island applied the reasoning of *Danann Realty Corp.* to a disclaimer specifically denying reliance upon the seller's representations as to the profitability of the business being sold. However, in *Travers v. Spidell*, 682 A.2d 471, 473 (R.I.1996) (per curiam), the court found that a merger-and-disclaimer clause was insufficient to invoke the rule where it did not specifically discuss the location or boundaries of the well in issue. Another path of evolution has been to dilute *Danann Realty Corp.* into a balancing test where the disclaimer is a factor to be considered in determining reliance. *See Flakus v. Schug*, 213 Neb. 491, 329 N.W.2d 859, 863 (1983), *overruled on other grounds sub nom., Nielsen v. Adams*, 223 Neb. 262, 388 N.W.2d 840 (1986).

Although not cited by the parties, we found that this issue is not unprecedented in Wyoming, and we choose to follow our long-established rule. Our decision to do so is not solely based on consideration of the doctrine of stare decisis, but also our finding that the rule in Wyoming more appropriately balances the competing interests of justice and freedom of contract.

In *Baylies v. Vanden Boom*, 40 Wyo. 411, 278 P. 551, 552 (1929), the parties negotiated an exchange of a hotel in Kansas City, Missouri for a ranch in Uinta County. The parties entered into a agreement which provided:

> "In the telegram of acceptance of proposition of the exchange of properties said telegram mentioned certain representations made by Bert L. Cook, Henry J. Vanden Boom, having no way of knowing whether to concur in his agents' representations, said representations are herewith set out, and constitute the only representations made."

*Baylies*, 278 P. at 553–54. The memorandum went on to list several representations, and was signed by both parties. *Id.* at 554. After taking over management of the hotel, Baylies discovered that several of the representations made to him, and not contained within the agreement, were untrue. *Id.* at 552. Baylies sued to rescind the contract, and Vanden Boom asserted that Baylies was precluded from asserting reliance upon any representations not contained within the memorandum. *Id.* at 551–52.

We considered the rule analogous to *Danann Realty Corp.* that was in use at the time in several jurisdictions, and exemplified by Massachusetts cases.

> "The Massachusetts cases emphasize the desirability of certainty in the contractual relations of those who have made a definite agreement, and if they say that they contract without regard to prior representa-

tions and that prior utterances have not been an inducement to their consent, any occasional damage to the individual caused by antecedent fraud is thought to be outweighed by the advantage of certainty and freedom from attacks, which would in the majority of cases be unfounded where such provisions were in the agreement."

*Baylies,* 278 P. at 555 (*quoting Arnold v. National Aniline & Chemical Co.,* 20 F.2d 364 (2nd Cir.1927)). We found, however, that competing considerations outweighed any interest in certainty. " 'A perpetrator of fraud cannot close the lips of his innocent victim by getting him blindly to agree in advance not to complain against it.' " *Baylies,* 278 P. at 556 (*quoting Webster v. Palm Beach Ocean Realty Co.,* 16 Del.Ch. 15, 139 A. 457 (1927)). We held that Baylies was not precluded from proving that he relied upon the fraudulent misrepresentations notwithstanding the fact that he had signed the memorandum. *Baylies,* 278 P. at 557.

The Massachusetts Supreme Court has subsequently adopted the rule to which we subscribe, and has succinctly stated the policy behind the rule:

> In the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representations which in fact have been made and in fact are false but for which he would not have made the agreement. To deny this possibility is to ignore the frequent instances in everyday experience where parties accept, often without critical examination, and act upon agreements containing somewhere within their four corners exculpatory clauses in one form or another, but where they do so, nevertheless, in reliance upon the honesty of supposed friends, the plausible and disarming statements of salesmen, or the customary course of business. To refuse relief would result in opening the door to a multitude of frauds and in thwarting the general policy of the law.

*Bates v. Southgate,* 308 Mass. 170, 31 N.E.2d 551, 558 (1941).

■ Moreover, such a rule comports with the well-established exceptions to the parol evidence rule. That rule dictates that when the meaning of a contract is unambiguous, extrinsic evidence is not admitted to contradict the plain meaning of the terms used by the parties. *Union Pacific Resources Co. v. Texaco, Inc.,* 882 P.2d 212, 220 (Wyo.1994). We depart from the parol evidence rule only if parol evidence is used to establish a separate and distinct contract, a condition precedent, **fraud**, mistake or repudiation. *Applied Genetics Intern., Inc. v. First Affiliated Securities, Inc.,* 912 F.2d 1238, 1245 (10th Cir.1990); Restatement of Contracts (Second) § 214 (1981).

■ Therefore, we decline to adopt the reasoning of *Danann Realty Corp.,* and hold that Snyder is not precluded from asserting a claim for fraudulent misrepresentation by either the merger or disclaimer clauses. While the district court's decision on this issue was incorrect, it is well established that a district court judgment may be affirmed on any proper legal grounds supported by the record. *Bird v. Rozier,* 948 P.2d 888, 892 (Wyo.1997).

■ "A plaintiff who alleges fraud must do so clearly and distinctly, and fraud will not be imputed to any party when the facts and circumstances out of which it is alleged to arise are consistent with honesty and purity of intention." *Duffy v. Brown,* 708 P.2d 433, 437 (Wyo.1985). Fraud must be established by clear and convincing evidence, and will never be presumed. *Id.*

■ In the present case, Snyder presented no evidence to the district court consistent with fraud. Ron expressed his belief about the extent of the rye problem, and immediately sought a more informed opinion. No accusation has been made that Headrick's appraisal of the rye problem was based on anything other than his observations or was intentionally misleading. No one prevented Snyder from inspecting the land, and, in fact, he visited the land at least ten times before he agreed to the purchase. The facts of this case do not even approach the elevated burden of proof necessary to establish a claim of fraud. Summary judgment was properly granted on this issue.

## 2. NEGLIGENT MISREPRESENTATION·

As noted above, the district court held that the presence of the disclaimer precluded Snyder from asserting reliance upon the negligent misrepresentations of the Loverchecks through Ron. We do not reach the merits of this issue, as we address the initial question posed by inclusion of a claim for negligent misrepresentation, which is whether a plaintiff may bring an action which arises out of a contract and call it a tort action, thereby rendering his own statement in the contract null and void.

We have never addressed the exact issue presented, and, therefore, we must look to other jurisdictions for guidance. Again, there are two predominant views on the subject. One view is that the contractual relationship controls, and parties are not permitted to assert actions in tort in an attempt to circumvent the bargain they agreed upon. The second view assumes that an action in tort is permissible, and that the parol evidence rule does not apply, and, therefore, the action may be maintained. We find the former to be the better rule.

In *Rio Grande Jewelers Supply, Inc. v. Data General Corp.*, 101 N.M. 798, 689 P.2d 1269 (1984), the Supreme Court of New Mexico considered a contract with provisions similar to those present in this case. There, the buyer of goods brought an action against the seller for negligent misrepresentation made prior to the formation of the contract and an action for breach of express warranties. The contract included an integration clause and a provision disclaiming all prior representations and all warranties, express or implied, not contained therein. *Id.* at 1270–71. The New Mexico Supreme Court found that the buyer's claim of negligent misrepresentation was "nothing more than an attempt to circumvent the operation of the Commercial Code and to allow the contract to be rewritten under the guise of an alleged action in tort." *Id.* at 1271.

The Tenth Circuit Court of Appeals expanded upon the reasoning articulated in *Rio Grande Jewelers Supply, Inc.* in *Isler v. Texas Oil & Gas Corp.*, 749 F.2d 22 (10th Cir. 1984). We quote at length from this well-reasoned and persuasive opinion.

The very notion of contract is the consensual formation of relationships with bargained-for duties. · An essential corollary of the concept of bargained-for duties is bargained-for liabilities for failure to perform them. Important to the vitality of contract is the capacity voluntarily to define the consequences of the breach of a duty before assuming the duty.

This case is illustrative. The effect of confusing the concept of contractual duties, which are voluntarily bargained for, with the concept of tort duties, which are largely imposed by law, would be to nullify a substantial part of what the parties expressly bargained for-limited liability. Unless such bargains are against public policy (covered either by prohibitory statutes or well-defined, judge-made rules such as unconscionability), there is no reason in fact or in law to undermine them. Indeed, it would be an unwarranted judicial intrusion into the marketplace. No reason appears to support such a radical shift from bargained-for duties and liabilities to the imposition of duties and liabilities that were expressly negated by the parties themselves when they decided to abandon their status as legal strangers and define their relationship by contract. Tort law proceeds from a long historical evolution of externally imposed duties and liabilities. Contract law proceeds from an even longer historical evolution of bargained-for duties and liabilities. The careless and unnecessary blanket confusion of tort and contract would undermine the carefully evolved utility of both.

In tort, the legislatures and the courts have set the parameters of social policy and imposed them on individual members of society without their consent. The social policy in the field of contract has been left to the parties themselves to determine, with judicial and legislative intervention tolerated only in the most extreme cases. Where there has been intervention, it has been by the application of well established contract doctrines, most of which focus on threats to the integrity of the bargaining process itself such as fraud or extreme imbalance in bargaining power.

Further, it should not matter whether the breach of a bargained-for duty arises from inattention, a disagreement over the existence of the duty, a dispute over the nature of the duty, an inability to perform the duty, or a simple unwillingness to perform the duty. The parties by contract (or in the absence of an express provision, by implied rules evolved under contract analysis) have themselves defined the consequences of the breach. In the marketplace of contract, a breach is a breach is a breach—unless the parties choose to specify otherwise.

*Isler*, 749 F.2d at 23–24.

The Supreme Court of Kansas endorsed the reasoning of *Isler* in *Ford Motor Credit Co. v. Suburban Ford*, 237 Kan. 195, 699 P.2d 992, 998 (Kan.), *cert. denied*, 474 U.S. 995, 106 S.Ct. 409, 88 L.Ed.2d 360 (1985).

*Suburban Ford* [699 P.2d 992] stands for the proposition that a contract action cannot become a tort action by simply saying so. It stands for the proposition that when parties' difficulties arise directly from a contractual relationship, the resulting litigation concerning those difficulties is one in contract no matter what words the plaintiff may wish to use in describing it.

*Beeson v. Erickson*, 22 Kan.App.2d 452, 917 P.2d 901, 907 (1996).

Those cases which do not subscribe to the above reasoning have structured the issue as whether the parol evidence rule bars admission of the prior representations in the face of merger and disclaimer clauses. In the leading case of *Formento v. Encanto Business Park*, 154 Ariz. 495, 744 P.2d 22 (1987), the Arizona Court of Appeals found two bases for its decision to allow the claim for negligent misrepresentation to proceed. The Arizona Court of Appeals said that the parol evidence rule does not apply, because fraud is a recognized exception to the rule, and there is no difference in the result that obtains from either a fraudulent or a negligent misrepresentation. *Id.* at 26. The *Formen-*

*to* court went on to say that the parol evidence rule is a rule of substantive contract law, and, therefore, has no application to the tort of negligent misrepresentation. *Id.* The cases that have followed *Formento* have tended to adopt the latter reasoning. *See Keller v. A.O. Smith Harvestore Products, Inc.*, 819 P.2d 69, 72–73 (Colo.1991); *Gilliland v. Elmwood Properties*, 301 S.C. 295, 391 S.E.2d 577, 580–81 (1990); and *Stamp v. Honest Abe Log Homes, Inc.*, 804 S.W.2d 455, 457 (Tenn.App.1990).[2]

We cannot agree with the first rationale espoused in *Formento*. While there is practically no difference in the harm that can result from either fraud or negligence, there are numerous examples in the law where a specific state of mind is a necessary predicate to a cause of action. Fraud and negligence embody two different states of mind, one of which has long been viewed as sufficiently egregious to warrant the intermingling of tort and contract principles via the parol evidence rule. We see no reason to extend that well-recognized rule beyond its historical boundaries.

The second rationale is even more difficult to accept. The reasoning of the court is that the parol evidence rule does not apply because it is a rule of contract law which cannot be infused into a tort cause of action. The difficulty with such reasoning is that it ignores the fact that a tort cause of action is being infused into a contractual relationship. Strict adherence to the principle of separation would actually lead to the opposite result in *Formento*.

■ While we recognize that the fields of tort and contract law are not completely divisible, we follow the rationale of those courts who find the contractual relationship controlling. Thus, the remaining determination is whether the merger and disclaimer clauses in the contract completely encompass all of the rights, duties, and liabilities of the parties with respect to the prior representations. We conclude that they do.

2. We note that these cases have not been particularly well received by commentators. *See* Elizabeth Cumming, Note, *Balancing the Buyer's Right to Recover for Precontractual Misstatements and the Seller's Ability to Disclaim Express War-* *ranties*, 76 Minn. L.Rev. 1189 (1992) and Jared M. Levin, Note, *A Proposed Penalty Default Rule Governing a Seller's Ability to Disclaim Liability for Precontractual Misrepresentations*, 1997 Colum. Bus. L.Rev. 399 (1997).

It is well established in Wyoming that when parties reduce a contract to writing, they must abide by its plainly stated terms. *Patel v. Harless*, 926 P.2d 963, 966 (Wyo.1996). Courts are not free to rewrite contracts under the guise of interpretation where the contractual provisions are clear and unambiguous. *Klutznick v. Thulin*, 814 P.2d 1267, 1270 (Wyo.1991). "Accordingly, in private disputes, a court must enforce the contract as drafted by the parties and may not relieve a contracting party from anticipated or actual difficulties undertaken pursuant to the contract, unless the contract is voidable on grounds such as mistake, fraud or unconscionability." *Holly Hill Holdings v. Lowman*, 226 Conn. 748, 628 A.2d 1298, 1302 (1993) (*citing* 1 Restatement (Second), Contracts §§ 154, 159, and vol. 2, § 208 (1981)). Moreover, "[o]ne who signs a contract generally cannot avoid it on the ground that he did not attend to its terms, or did not read it, or that he took someone's word as to what it contained." *First State Bank of Wheatland v. American Nat. Bank*, 808 P.2d 804, 806 (Wyo.1991).

The contract clearly and unambiguously states that Snyder is not relying on any representations made by Ron or the Loverchecks. This clause validly allocates the risk of loss resulting from Snyder's reliance on the Lovercheck's representations. *See Gibson v. Capano*, 241 Conn. 725, 699 A.2d 68, 71 (1997) (considering a similar clause). The parties were free to contract for whatever terms they wished, and they chose to allocate the risk of loss to Snyder. Snyder's claim that he did not read or understand the terms to which he was agreeing falls on deaf ears. Under the circumstances, we are aware of no duty that the law would impose upon the Loverchecks either to ensure that Snyder's representation of non-reliance was genuine or to protect Snyder from poorly allocating the risk of loss. Summary judgment was appropriate as Snyder is barred from asserting a claim for negligent misrepresentation.

### B. SUMMARY JUDGEMENT—HAYEK AND THE PROPERTY EXCHANGE

Snyder contends that Hayek's failure to advise him of the presence of and failure to strike the disclaimer clause in the contract constitutes an actionable breach of duty. Hayek maintains that Snyder waived the breach of duty by signing the contract. In support of this contention, Hayek refers us to two cases wherein a real estate broker obviously breached his duty to his client, but was relieved of responsibility for his error by the client's act of signing the contract.

In *Kidd v. Maldonado*, 688 P.2d 461, 462 (Utah 1984), the seller instructed his broker to include in the contract a "subject to" clause which would make the sale contingent on the seller's locating a new residence. The broker, however, inserted a clause that made the buyer's possession subject to the seller's relocation. *Id.* The seller sued the broker alleging a breach of the principal-agent relationship, and requested that the broker indemnify the seller for damages awarded to the buyers. *Id.* The Utah Supreme Court recognized that the broker had breached his duty to the seller, but found that:

> The language of the "subject to" clause in the earnest money agreement was known to the seller prior to presentation to the buyer. The seller read the agreement, and in particular the pertinent clause, before signing it; he knew the words used; and had an opportunity to raise any question concerning the language in the earnest money agreement with his real estate agent. The language at issue was nontechnical and readily understandable, and there is no hint of misrepresentation, fraud, or sharp dealing by the real estate agent in this case and none was pleaded.
>
> When a principal sees an act done by his agent and the act is not subject to misunderstanding by a reasonable person, the law does not permit the principal to ignore what is obvious, even if it be contrary to his instructions. When an agent exceeds his express authority, which must be assumed in this case because it is here on summary judgment, ratification by the principal releases the agent from liability in damages.

*Kidd*, 688 P.2d at 462.

*Barta v. Kindschuh*, 246 Neb. 208, 518 N.W.2d 98, 100 (1994) arose from a failure to accurately reflect the condition of the roof in

a "Property Disclosure Information" form. The sellers assumed that their broker made the necessary changes to the document when he was informed of the true condition of the roof. *Id.* at 99. The broker, in his defense, stated that he gave the form to the sellers to read and left the decision to sign it up to them. *Id.* at 99–100. The Nebraska Supreme Court quoted and followed the reasoning of *Kidd,* and held that the sellers acquiesced in and ratified the acts of the agent when they read and signed the unmodified form. *Id.* at 101–02.

■ We find these decisions, while well founded in the law of agency, to be incompatible with duties inherent in the relationship of broker and client. In *Hagar v. Mobley,* 638 P.2d 127 (Wyo.1981), we outlined the nature of this relationship. We said:

Realtors, just like doctors, lawyers, engineering consultants, and builders, hold themselves out as professionals; it is their job to know their profession. People rely on and trust them. Failure to comply with either the accepted standards in the field or the standards society is willing to recognize as acceptable, is actionable.

*Hagar,* 638 P.2d at 138. In *Hagar,* we stated that the accepted standards in the real estate field are provided by Wyo. Stat. Ann. § 33–28–111 (Michie 1977). *Hagar,* 638 P.2d at 137. The applicable provision of that statute provides that, "[f]ailing to advise the buyer and seller of all terms of the proposed sale at the time an offer is presented including estimated discounts and closing costs" is a breach of the broker's duty to his client. Wyo. Stat. Ann. § 33–28–111(a)(x) (Michie Repl.1987). The terms of a proposed sale include not only those contained in the initial offer, but also those added by the broker in the contract for sale, even if they are part of the boiler plate language of a form contract.

■ It is inconceivable to this Court that a broker can escape liability for failing to advise his client of the consequences of signing a document by allowing the client to sign the very document that the broker failed to explain. The circularity of such a rule is readily apparent, and provides no protection for the unsophisticated and unwary consumer who places his trust in his paid agent. The

better rule, and the one which we find to be consistent with the standard of care imposed upon brokers in Wyoming, was well stated by the Supreme Court of Oregon in *Prall v. Gooden,* 226 Or. 554, 360 P.2d 759, 762 (1961):

It also must be kept in mind that a real estate broker stands in a fiduciary relationship with his customer or client and is thus bound to protect his clients' interests. He must, therefore, make a full, fair and understandable explanation to the client before having him sign any contracts, particularly when those contracts are with the broker himself. * * *

The broker should make his explanation commensurate with the education and understanding of the people he is dealing with, and if he is unable to give competent advice he should allow them to obtain it elsewhere.

Thus, a broker's statutory duty to advise his client of the terms of the proposed contract is fulfilled when an explanation commensurate with the client's sophistication has been made.

■ Whether a sufficient explanation has been made is a question of fact to be determined from the totality of the surrounding circumstances. Ordinarily, we would remand a case such as this to the district court to make the required factual determination; however, the undisputed facts in this case are such that no genuine question of material fact could be raised. Snyder is not the typical first-time home buyer who might benefit from a detailed explanation of all the terms contained in a contract for sale. Snyder fancies himself a sophisticated purchaser. He has bought, sold, and traded various parcels of real estate several times in the past. He was negotiating the purchase of a 1,960 acre farm for $526,500.00. He was savvy enough to require that the sellers prepare a statement of condition of property. That statement provided that the "Sellers [made] no other representations of any kind relating to said property." Snyder read the document, and expressed neither concern nor confusion about the language. Hayek was justified in believing that a similar provision in the contract was understandable and ac-

ceptable to Snyder. Snyder has presented no evidence which would tend to prove that Hayek did not fulfill his duty to explain the terms of the contract. The district court's disposition on the motion for summary judgment was, therefore, appropriate.

### C. ATTORNEY'S FEES AND COSTS—THE LOVERCHECKS

#### 1. ATTORNEY'S FEES

 The rule in Wyoming is that attorney's fees are not recoverable in the absence of specific statutory authority, unless there is a contract providing for them. *Sheneman v. Division of Workers' Safety and Compensation Internal Hearing Unit, Dept. of Employment, State of Wyo.*, 962 P.2d 874, 875 (Wyo.1998); *Ahearn v. Tri–County Federal Sav. Bank,* 954 P.2d 1371, 1373 (Wyo.1998). The contract for sale at issue here provided:

In the event that any party shall become in default or breach of any of the terms of this Contract, such defaulting or breaching party shall pay all reasonable attorney's fees and other expenses which the non-breaching or nondefaulting party may incur in enforcing this Contract with or without suit.

 Snyder contends that the clause mandates that a party be found in default or breach before attorney's fees can be awarded. Snyder claims that since the district court did not specifically find that he had breached the contract, the condition precedent to an award of attorney's fees has not occurred, and the award was improper. The Loverchecks assert that there is no such condition precedent, and any attorney's fees incurred in enforcing the contract are properly awarded, if reasonable. We find that the provision plainly provides that one party to the contract breach the agreement before an award of attorney's fees is properly granted.

Here, the district court made no finding that Snyder breached the contract. While we have said that in the absence of special findings of fact, a district court judgment carries with it every finding of fact which is supported by the evidence, *Bishop v. Bishop,* 944 P.2d 425, 428 (Wyo.1997) (*quoting Deroche v. R.L. Manning Co.,* 737 P.2d 332, 335 (Wyo.1987)), and a judgment will be affirmed on any legal ground appearing in the record, *Bird,* 948 P.2d at 892, there is no evidence in the record on appeal which would support a finding that Snyder did not fulfill his obligation to pay for the farm. Accordingly, we remand to the district court for a determination whether Snyder breached the contract for sale.

#### 2. COSTS

Snyder contends that the district court erred when it awarded all of the costs claimed by the Loverchecks, because it did not follow the dictates of U.R.D.C. 501. He questions the propriety of awards of expert fees, deposition costs, photographs, and Westlaw research. The Loverchecks respond by asserting that they are proper under the rule, and even if they are not, the contract for sale provides for the payment of "all * * * other expenses * * *."

 Costs are purely statutory, as they did not exist at common law. *Weaver v. Mitchell,* 715 P.2d 1361, 1373 (Wyo.1986) (*quoting Roberts Construction Co. v. Vondriska,* 547 P.2d 1171, 1183 (Wyo.1976)). However, this is true only in the absence of an agreement concerning costs between the parties. *Kerns v. Engelke,* 76 Ill.2d 154, 28 Ill.Dec. 500, 390 N.E.2d 859, 865 (1979); *Luppold v. Lewis,* 172 Mont. 280, 563 P.2d 538, 545 (1977); *Washington Asphalt Co. v. Boyd,* 63 Wash.2d 690, 388 P.2d 965, 969 (1964); 20 C.J.S. *Costs* § 4 at 12 (1990). Parties to an agreement are free to bargain for payment of costs, just as they can bargain for payment of attorney's fees. The parties' agreement to an allocation of costs is not subject to the provisions of U.R.D.C. 501.

The contract provided for the payment of "all * * * other expenses * * *." [3] The district court awarded all of the expenses claimed by the Loverchecks in accordance with the agreement, and no argument has been made to this Court that these expenses

---

**3.** Neither party attempts to distinguish the term "expense" from the term "cost," and, therefore, we treat the terms as synonymous for purposes of this opinion.

were unreasonable. The costs, like the award of attorney's fees, however, cannot be awarded absent breach or default by Snyder, and, therefore, we remand this issue to the district court as well.

██ One element of the costs claimed can be finally resolved by this decision. The Loverchecks included $96.60 in Westlaw research in their inventory of costs. We conclude that computer research expenditures are included within attorney's fees and are not taxable as costs.

6 J. Moore, *Moore's Federal Practice,* ¶ 54.77[8] (2d ed.1986) states that "[c]omputer research is generally treated as a lawyer's cost and not taxable as ordinary costs[.]" * * * Similarly, 20 Am.Jur.2d *Costs* § 61 (1995) states that "[t]he expense of computer-aided research is also a component of attorney's fees, and like any other legal research such expense cannot be taxed as [an] item of cost in addition to the attorney's fees award." * * * These conclusions are confirmed by the Annotation on the *Recoverability of Cost of Computerized Legal Research Under 28 USCA § 1920 or Rule 54(d), Federal Rules of Civil Procedure,* 80 A.L.R.Fed. 168 (1986). *Bjornen v. State Farm Fire and Cas. Co.,* 81 Hawai'i 105, 912 P.2d 602, 604 (1996).

██ We vacate the award of costs for the Westlaw research, as that cost should have been included in the claim for attorney's fees. Since the research fee was not included in the original proof of attorney's fees, it cannot now be added to the attorney's fees already claimed. *Pekas v. Thompson,* 903 P.2d 532, 537 (Wyo.1995).

## V. CONCLUSION

Summary judgment was properly granted as to all claims; however, the findings necessary to an award of attorney's fees and costs were not made. By this decision, the balance of rights between sellers, buyers, and broker is maintained. Buyers may assert claims if they have been defrauded in their purchase; however, simple negligence will not relieve a buyer from a poor bargain. Brokers, entrusted with great responsibility to protect their client's interests, must explain the con-

tracts they present in a manner commensurate with the sophistication of their clients. Accordingly, the judgment of the district court is affirmed on the motions for summary judgment, and we remand to the district court for a determination on the issue of Snyder's breach of the contract. The award of $96.60 for Westlaw research is vacated.