**SUNDOWN, INC., a Wyoming corporation, Appellant (Plaintiff),**

v.

**PEARSON REAL ESTATE COMPANY, INC., a Wyoming corporation, John D. Pearson, Individually, Gold Star Land, a Wyoming Limited Liability Company, and Edward W. Kornkven, Individually, Appellees (Defendants).**

No. 99–43.

Supreme Court of Wyoming.

July 5, 2000.

Representing Appellant: John D. Whitaker, Casper, Wyoming.

Representing Appellees Pearson Real Estate Company, Inc., and John D. Pearson: W.W. Reeves of Reeves & Miller, Casper, Wyoming.

Representing Appellees Gold Star Land, LLC, and Edward W. Kornkven: Stephen K. Gerdes of White & Steele, P.C., Denver, Colorado.

Before LEHMAN, C.J., and THOMAS, MACY,* GOLDEN, and HILL, JJ.

GOLDEN, Justice.

Appellant Sundown, Inc. arbitrated a cancellation of its purchase contract of a ranch with seller after it discovered the extent to which two coal surface mining agreements encumbered the ranch. Contending that misrepresentations by the real estate brokers involved in the transaction, Appellees John D. Pearson, principal of Pearson Real Estate Company (Pearson), and Edward W. Kornkven, principal of Gold Star Land, LLC (Kornkven), induced it to execute the purchase contract and alter its existing ranching operations resulting in damages, Sundown brought suit on grounds of fraud and negligent misrepresentation. At the close of its case-in-chief, the trial judge directed a verdict in favor of Pearson and Kornkven. Sundown appeals.

We affirm the trial court's ruling as applied to Pearson but reverse and remand for trial to determine whether Kornkven fraudulently concealed material title exceptions before execution of the contract and caused damages.

## ISSUES

Sundown presents these issues for our review:

1. Whether the District Court erred as a matter of law when it concluded that no reasonable jury could find that the Defen-

* Retired June 2, 2000.

dants committed fraud or negligent misrepresentation under the facts of this case.

2. Whether the District Court erred as a matter of law when it determined that there were no damages caused by the misrepresentations of the Brokers prior to the delivery of the Arch Agreements to the Buyer.

3. Whether the Defendants breached their duty to take reasonable steps to avoid misrepresenting the property.

4. Whether there was sufficient evidence for the jury to find that Appellee Kornkven owed Plaintiff a duty of utmost good faith, loyalty and confidence which he breached by failing to discover and disclose to the Plaintiff the effect of the Arch Agreements.

Pearson presents these issues for our review:

A. Whether Appellant offered evidence of any misrepresentation from which a reasonable jury could find that Appellee Pearson misrepresented or failed to disclose any material fact under any of the theories plead or pursued by Appellant?

B. Whether Appellant's claims are barred by prior judgment on the same claims in arbitration with Appellee's principal.

Appellee Kornkven does not present separate issues.

## FACTS

Marc Nogle, a Casper businessman, owns the Credit Bureau of Casper, its branch offices, and Sundown, Inc., a real estate and ranch holding company consisting of commercial real estate and two ranches with 700 and 2,300 deeded acres respectively. Both ranches have federal and state permits. One ranch is a 300 cow-calf operation, and the other ranch runs 2,800 head of sheep. Sundown was interested in purchasing another ranch in order to consolidate its operations and increase its livestock number. In 1996, Nogle received information from brokers Pearson and Kornkven that the Dana Meadows Ranch in Carbon County, Wyoming, was for sale. The ranch consists of 39,955 deeded acres and over 60,000 acres of non-owned access from government and railroad leases. Pearson provided to Nogle a brochure about the ranch stating that no known mineral rights remained with the seller and describing the grazing restrictions caused by coal mining operations on the ranch. It stated in part:

Over the years, there has been a considerable amount of open pit strip mining done on the Federal, deeded and U.P.R.R. lands in the southern area of the ranch. At the present time (as of December 1995), there are three active mining companies: 1) Arch Minerals; 2) Rosebud Coal Co.; and 3) Cyprus/Shoshone.

The pastures where coal mining has occurred must all be reclaimed according to Wyoming Department of Environmental Quality. The reclamation areas must be totally restored to their original state and therefore it can take years (usually 6–8 years) before livestock are allowed to graze the reclaimed areas. Within the next 1–2 years, some of the reclaimed areas will become available to graze, which will allow the owner to carry more livestock.

The coal being mined in this area is a very high grade coal, but has a lot of overburden (dirt) on top of the coal. Therefore, it is very expensive to mine the coal and the probability for these mines to stay open is not feasible. The coal mines have been beneficial to the ranch because of water development, fencing and improved roads.

Regarding purchase price, the brochure stated that "[t]he seller reserves the right to effectuate a 1031 exchange for all or a portion of the final sales price of the ranch."

The ranch is encumbered by two coal surface mining agreements known as the Arch Agreements executed in 1986 and 1993 for a term of thirty years. The agreements do not specify the number of acres encumbered but list over seven pages of legal descriptions of the affected property. Testimony at trial established that these agreements give Arch exclusive right of control of a majority of the ranch.

Arrangements were made for Nogle to tour the ranch, and Pearson demanded that Kornkven sign a brokerage disclosure statement before the tour. Kornkven did not

provide this statement, and Nogle toured the ranch on April 18 and April 21, 1996. On the first trip, Pearson told Nogle that the coal mining operations had benefitted the ranch in a number of ways and were ending in the next couple of years. Nogle toured the ranch and noticed little activity from the coal mining operations. On the second visit, the ranch manager, Casey Palm, showed Nogle a map by Arch Mineral that indicated where the restricted grazing was on the ranch. That map showed that the majority of the mining operations was on adjacent property and indicated that a few isolated areas of the ranch were restricted to grazing. At that time, Nogle claims that the brokers told him that the purchase could be completed through a stock exchange purchase.

A title commitment showing sixty-two title exceptions was delivered to Pearson on March 20, 1996. On April 26, 1996, Pearson gave Kornkven a copy of the title commitment containing potential exceptions of records including the Arch Agreements. Kornkven did not give this information to Nogle.

On April 26, 1996, Kornkven prepared a written offer to purchase the ranch expressing that Sundown, Inc. was buying the property "subject to" title exceptions of record. Kornkven did not discuss this provision with Nogle and had not provided either Nogle or Pearson with a brokerage disclosure statement; however, Nogle claims that Kornkven represented to him that he was working as his agent. Nogle shared confidential information with Kornkven. Kornkven signed a second offer without Nogle's permission on July 29, 1996, and on August 5, 1996, Nogle signed that written offer for Sundown, Inc., to purchase the property subject to title exceptions of record and delivered $50,000.00 in earnest money to Pearson. The offer was rejected, further negotiations ensued, and Pearson faxed a counteroffer to Kornkven from the seller that included an addendum to the counteroffer titled Addendum B-1 which referred to the Arch agreements:

> Purchaser is aware and acknowledges by signing this agreement that there is restricted livestock use of the two pastures known as (A) Headquarters Pasture (B) TV Hill Pasture. Due to active coal mining and related reclamation work in these two pastures, Dana Meadows Ranch has restricted livestock grazing use of these two pastures. The Seller shall provide to the Purchaser the written agreement between Dana Meadows Ranch and Arch Mineral stating the terms and conditions of said agreement.

Nogle claims that Kornkven did not show him the Addendum. His claim is supported by the lack of his signature on the Addendum and counteroffer although each had signature lines for Nogle to sign acknowledging that he had seen them. More counteroffers were exchanged in which Nogle stated that he was seeking a stock exchange purchase, and offering $1,700,000.00 for the ranch. These terms were accepted by the seller on August 19, 1996.

Nogle signed the real estate contract for the ranch which contained the following provisions:

X. Condition of Property.

\* \* \*

B. Buyer acknowledges and agrees that, upon execution of this Contract:

1. Buyer is not relying upon any representations of Seller or Seller's Agents or representatives as to any condition which Buyer deems to be material to Buyer's decision to purchase this property;

\* \* \*

XI. Inspections.

\* \* \*

D. Waiver of Defects.

Buyer acknowledges that he has not been denied any opportunity to inspect property. Other than repairs or defects submitted to the Seller in writing pursuant to XI (A), (B), or (C) above, or in the event no repairs or inspections are required by Buyer, Buyer accepts the property in its entirety in "as is, where is" condition without any implied or express warranty by Seller or by any Broker.

* * *

XV. Consents and Acknowledgments.

D. E.W. Kornkven (Broker working with the Buyer) hereby discloses that it is working with the Buyer as Seller's Sub-agent and will be compensated by Seller. Buyer and Seller consent to that arrangement. Broker has previously delivered to (Buyer)(Seller) a written Real Estate Brokerage Disclosure.[1]

After the contract was signed, the seller sent the Arch Agreements to Pearson who forwarded them to Kornkven. Pearson attached a cover letter dated August 26, 1996, and a copy of the map that Palm had shown to Nogle on April 18. The cover letter was entitled "Copy of Agreement between Arch of Wyoming, Inc. and Dana Meadows Ranches/Reclamation Map" and stated:

As you know, Arch Minerals has two operating coal mines on the Dana Meadows Ranch known as the Medicine Bow and the Seminoe II Mines. I am forwarding to you ... the original ... Agreement ... [and] another agreement [that] was completed that avoided litigation ... dated November 10, 1993....

As you know Marc, Casey Palm and Lois Palm McCalla now work hand in hand with Arch Mineral to coordinate any grazing on the two pastures at the southern end of the ranch. The large map that I am forwarding to you shows where coal mining has occurred and where the various reclamation projects have been finished.

Large areas of the Dana Meadows Ranch, particularly in the southern end of the ranch have been mined and reclaimed. Those areas have been in a set-aside reclamation project anywhere from 7–10 years and it is my understanding that most of these reclaimed areas are about to be released out of the reclamation set-aside period by the Department of Environmental Quality, State of Wyoming. As you know, many of the reclaimed areas have had no livestock grazing on them for years and in the near future, as these reclaimed areas are released out of the reclamation set-aside, livestock grazing will be allowed.

As you probably know, it appears that the three mines operating on the ranch at the present time will be winding down their operations these next 4–6 years. I have also enclosed an article that was published on June 25, 1996, stating that more than likely, Arch Mineral is going to wind down their operations in the Hanna Area....

On September 7, 1996, the title company issued a title commitment listing Sundown, Inc., as the buyer and listing sixty-seven exceptions to title. On September 12, 1996, all parties met at the ranch and reviewed the document, and Nogle asked Pearson to provide him with copies of certain exceptions. Pearson did not tell him that he had previously provided documents to Kornkven. Pearson provided Nogle with a property condition statement that did not refer to the Arch Agreements. At trial, Sundown's expert witness testified that the property condition statement should have reflected the Arch Agreements.

In late August or early September, Nogle discovered that the stock exchange purchase that Sundown, Inc. had planned was not viable and began seeking cash financing. He instructed Kornkven to obtain and review all relevant documents. Kornkven did not tell him of the effect of the Arch Agreements. Nogle testified that he first received the Arch Agreements in September or October but did not read them. He testified that the representations of Pearson's cover letter and Palm's map in combination with previous representations caused him to believe that none of the title exceptions would effect ranching operations.

Nogle testified that in November of 1996 he began planning to transfer his livestock to Dana Meadows Ranch, and in December he bred his sheep flock to "range lamb" in the spring at the Dana Meadows Ranch. Nogle took the title exception documents including the Arch Agreements to his attorney for review. After his attorney advised him of

---

**1.** Buyer should have been deleted but was not. Kornkven never provided the disclosure to Pear- son.

the effect of the Arch Agreements, Nogle mapped the legal descriptions contained in the agreements and discovered the extent of acreage covered. He decided that the agreements did have a significant impact on ranching operations, and a meeting with Arch Mineral Company to determine its position on the agreements confirmed this belief.

Nogle claimed that the brokers had concealed and misrepresented the scope of the Arch Agreements and demanded the seller reduce the purchase price or return his earnest money. The seller refused, and the parties went to arbitration. Early in this process, the seller sold the ranch for $1.9 million. A three-arbitrator panel determined that because of the numerous title exceptions, the seller had not conveyed merchantable title as required under the contract and ordered that Sundown's earnest money deposit be returned. The order denied all other claims of damages.

Sundown, Inc. brought suit against the two brokers, and the parties went to trial. At the close of Sundown's evidence, the judge directed a verdict for both brokers, ruling that Sundown, Inc. had not shown any breach of duty and had not shown that Sundown, Inc. had suffered any damages before it was given the Arch Agreements. This appeal followed.

## DISCUSSION

*Standard of Review*

W.R.C.P. 50(a)(1) provides:

(a) *Judgment as a matter of law.*—

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

"Despite the fact that judgment as a matter of law should be granted cautiously and sparingly, the district court has an obligation to direct entry of such a judgment where there is legally insufficient evidence to support a verdict on a particular issue. The decision to grant or deny a motion for a judgment as a matter of law is reviewed *de novo.*" *Sayer v. Williams,* 962 P.2d 165, 167 (Wyo.1998).

We undertake a full review of the record without deference to the views of the trial court. The test to be applied is whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable persons could have reached. We view the evidence in the light most favorable to the nonmoving party, and give that party the benefit of all reasonable inferences that may be drawn from the evidence. When the facts permit the drawing of more than one inference, it is for the jury to choose which will be utilized.

*John Q. Hammons Inc. v. Poletis,* 954 P.2d 1353, 1356 (Wyo.1998) (citations omitted). If the inferences favorable to the movant are subject to doubt, or if parallel inferences can be drawn, the motion appropriately is denied. *Stauffer Chemical Co. v. Curry,* 778 P.2d 1083, 1103 (Wyo.1989); *Ramirez v. Metropolitan Life Insurance Company,* 580 P.2d 1136, 1138 (Wyo.1978).

*Claims against Pearson*

Fraud is established when a plaintiff demonstrates, by clear and convincing evidence, that (1) the defendant made a false representation intended to induce action by the plaintiff; (2) the plaintiff reasonably believed the representation to be true; and (3) the plaintiff relied on the false representation and suffered damages. *Jurkovich v. Tomlinson,* 905 P.2d 409, 411 (Wyo.1995); *Lavoie v. Safecare Health Service, Inc.,* 840 P.2d 239, 252 (Wyo.1992); *Husman, Inc. v. Triton Coal Co.,* 809 P.2d 796, 799 (Wyo.1991). *See also Britton v. Bill Anselmi Pontiac–Buick–GMC, Inc.,* 786 P.2d 855, 860 (Wyo.1990); *Rocky Mountain Helicopters, Inc. v. Air Freight, Inc.,* 773 P.2d 911, 919 (Wyo.1989). Conduct or words which tend to produce an erroneous impression may satisfy the plaintiff's burden. *Britton,* 786 P.2d at 860. In

addition, even if someone is not under a duty to speak, if he does speak, he is under a duty to speak truthfully and to make a full and fair disclosure. *Id.; Meeker v. Lanham,* 604 P.2d 556, 558 (Wyo.1979). Reliance is reasonable when false representations have occurred prior to the execution of the contract which is sought to be avoided or for which damages are sought to be recovered. *Schepps v. Howe,* 665 P.2d 504, 508 (Wyo. 1983).

 Sundown contends that Pearson's fraudulent representations before the contract was executed appeared in the brochure statements and the map of restricted grazing, both of which failed to disclose the Arch Agreements and the significant impact of the Arch Agreements on the use of the land. Pearson contends that the map represented present grazing restrictions, not future, and represented proposed areas for coal mining and not all areas subject to the Arch Agreements. He contends that the brochure statements were opinions that are not subject to a fraud action, pointing to the rule that in order for the brochure statements to be actionable, any false representation must relate to a matter of fact rather than of opinion. *Twing v. Schott,* 80 Wyo. 100, 113–14, 338 P.2d 839, 843–44 (Wyo.1959). He contends that the existence of the Arch Agreements was properly disclosed before the contract was signed in the Addendum B–1, that he had no duty to read the agreements before the purchase contract was signed, and the agreements were properly disclosed after signing. He claims, further, that he owed no other duty to a non-client buyer.

 The duty of care owed by real estate brokers and salespersons to a non-client buyer is: (1) to not perpetuate a material representation of the seller which the broker/salesperson knows or should know is false, and (2) to take reasonable steps to avoid giving the buyer false information. *Hagar v. Mobley,* 638 P.2d 127, 137–38 (Wyo.1981). Nogle's testimony at trial establishes that the map purported to show areas of restricted grazing. He testified that it confirmed his understanding that the mining activity was limited and would not affect ranching operations. Nogle did not testify that Pearson or the

sellers represented that the map reflected future restrictions. The brochure statements are opinions that are not actionable under the law. The failure to disclose the existence and the effect of the Arch Agreements in the brochure and the map are not fraudulent unless the statements violate the accepted standards in the real estate field as provided by Wyoming statute. *Snyder v. Lovercheck,* 992 P.2d 1079, 1090 (Wyo.1999) (citing *Hagar,* 638 P.2d at 138). When the contract was executed in 1996, Wyoming statute made general prohibitions against substantially misrepresenting facts and making false promises in order to induce action. Wyo.Stat.Ann. § 33–28–111(a)(i) (Lexis 1999). Under this general fraud standard, we do not find that failing to disclose the existence and the effect of the Arch agreements in the brochure and map are fraudulent misrepresentations.

 Sundown next contends that, after the contract was executed, Pearson drafted a seriously misleading cover letter to the Arch Agreements stressing the value the coal companies had added to the ranch but saying nothing about the burdens it imposed on the surface. It also claims that Pearson's property disclosure statement did not identify the Arch Agreements although the statement was prepared on August 27, 1996, after Pearson claims to have first read and delivered the Arch Agreements to Kornkven. Sundown contends these misrepresentations induced it to rely on Pearson's representations that ranching operations were not affected by the agreements rather than closely reading the accompanying Arch Agreements, and his reliance caused him to decide to range lamb his sheep and thereby incur damages. Although the trial court determined that Sundown's possession of the agreements before damages were incurred precluded recovery, we find that the cover letter is not fraudulent, but expresses mere opinion about the future winding down of mining operations that is not actionable.

 Sundown's contentions amount to a claim of fraudulent nondisclosure and fraudulent concealment. *See Richey v. Patrick,* 904 P.2d 798, 801 (Wyo.1995) (citing Restatement

(Second) of Torts §§ 551, 550 (1977)). Before nondisclosure or fraudulent concealment can be considered, Sundown must show that Pearson had a duty to disclose the information. *Burman v. Richmond Homes Ltd.*, 821 P.2d 913, 918 (Colo.App.1991). Sundown has made no such showing either in this appeal or at trial, and we find no error in entry of the directed verdict on the issue of fraud.

 Sundown next contends that Pearson's representations were negligent. The elements of negligent misrepresentation are false information supplied in the course of one's business for the guidance of others in their business; failure to exercise reasonable care in obtaining or relating the information; and pecuniary loss resulting from justifiable reliance thereon. *Richey*, 904 P.2d at 802; Restatement (Second) of Torts § 552(1) (1977). In *Snyder v. Lovercheck*, however, we decided that where the contract includes a disclaimer provision, stating that the buyer is not relying upon any representation of seller or seller's agents, the buyer may not assert a claim for negligent misrepresentation. *Snyder*, 992 P.2d at 1089. The real estate contract executed by Nogle for Sundown contained such a disclaimer provision, and a claim for negligent misrepresentation cannot be asserted.

 Sundown also argues that nondisclosure of the information discussed previously was negligent. We have previously determined that Wyoming does not recognize a cause of action for negligent nondisclosure, Sundown does not provide authority or argument that we should adopt that cause of action in this case, and the issue is not further considered. *Givens v. Fowler*, 984 P.2d 1092, 1097 (Wyo.1999). In summary, we affirm the directed verdict for all claims against Pearson.

*Claims against Kornkven*

 Sundown contends that Kornkven misrepresented his agency relationship by telling the seller that he was working for it and telling the buyer that he was working for it; failed to disclose the title exceptions; drafted contracts waiving title exceptions without disclosing them to Nogle; accepted Nogle's request to review the title documents and disclose defects and then failed to disclose the effect of the Arch Agreements. Sundown contends these false representations were intended to and did induce it to sign the purchase contract and close the transaction, and its reliance reasonably caused it to decide to range lamb the sheep and thereby incur damages.

Although Kornkven contends that the executed contract discloses that he was the seller's subagent, Nogle testified that Kornkven orally represented that he was acting as Sundown's agent and then assumed responsibilities to review the title exceptions for Sundown. We note that Kornkven's failure to provide a brokerage disclosure statement to the seller supports Sundown's claim. This Court has not addressed the issue of the duty owed by a broker who misrepresents his ability to represent purchaser's interest because he also represents seller. *See Messler v. Phillips*, 867 P.2d 128, 132 (Colo.App.1993) (broker's negligent misrepresentation violated broker's duty of honesty and fair dealing). Sundown contends that if the jury found that Kornkven was acting as Sundown's agent, Kornkven owed it a fiduciary duty of good faith and undivided loyalty. *Hagar*, 638 P.2d at 137. Sundown contends that Kornkven breached this duty by failing to disclose the existence and effect of the Arch agreements.

Kornkven contends that this issue is being raised for the first time on appeal. W.R.C.P. 9(b) provides that fraud must be pled with particularity. Our review of Sundown's complaint indicates that it identified Kornkven as the subagent of Pearson Real Estate Company, identified the duty owed as the duty a broker owes to a nonclient buyer and did not state any facts alleging that Kornkven acted as buyer's agent and acted fraudulently in that capacity. The record does not indicate that the complaint was amended to plead the fraud claim against Kornkven in any capacity other than as seller's subagent. We agree with Kornkven that at the time that the directed verdict was entered the issue before the trial court was Kornkven's breach of the duty owed by a broker to a nonclient. This claim that Kornkven was acting as Sundown's agent is raised improperly for the first time on appeal.

Limited to finding that Kornkven was acting as seller's agent and not acting as Sundown's agent, the applicable duty is the same as Pearson's, and we again find that Sundown has not properly established a negligent nondisclosure cause of action and cannot assert a claim for negligent misrepresentation because of the disclaimer provision. We do find, however, that the jury may consider whether Kornkven's failure to provide the title commitment listing and the Addendum B–1 to Nogle before execution of the contract concealed material facts. Such conduct, if intentional, would constitute fraudulent concealment, and the party would be liable for pecuniary loss. Restatement (Second) of Torts § 550 (1977); *see Richey*, 904 P.2d at 802. Whether the element of damages has been satisfied is next considered.

*Damages*

Sundown has claimed it incurred attorney's fees and costs when it had to arbitrate to recover its earnest money. W.R.C.P. 54(d) provides in pertinent part:

(2) Attorney's Fees.

(A) When allowed by law, claims for attorney's fees and related nontaxable expenses shall be made by motion **unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial.**

(emphasis added). Despite Wyoming's well-settled rule that generally attorney's fees are not recoverable in the absence of specific statutory or contract authority, *Snyder*, 992 P.2d at 1091, Sundown contends that it is entitled to recover attorney's fees based on the "tort of another" exception to the general rule that each party must pay his own attorney fees, relying on *Gray v. Don Miller & Assoc.*, 35 Cal.3d 498, 198 Cal.Rptr. 551, 674 P.2d 253, 258–59 (1984). *Gray*'s rule permits this exception when the plaintiff is required to protect his interest by bringing an action as the result of another's wrongdoing. *Id.* This exception is recognized in Restatement (Second) of Torts § 914 (1979), which states:

(1) The damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation. (2) One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

In another context, we have previously allowed recovery of attorney's fees incurred as the result of litigation against a third-party. *Hoiness–LaBar Ins. v. Julien Const. Co.*, 743 P.2d 1262, 1273–74 (Wyo.1987). We find that adoption of the Restatement exception is in accord with our law, and Sundown, if successful in proving its cause of action, will be allowed to recover those costs expended to protect its interests by engaging in the arbitration procedures.

## CONCLUSION

We affirm the trial court's grant of a directed verdict to Pearson. The evidence that he had fraudulently misrepresented the title exceptions to the ranch before and after execution of the contract was legally insufficient. We reverse the trial court's grant of a directed verdict to Kornkven on the sole issue of whether Kornkven fraudulently concealed title exceptions to Sundown before execution of the contract resulting in damages, and remand for trial.