2012 WY 31

**UNIVERSAL DRILLING COMPANY, LLC, a Wyoming Limited Liability Company, Appellant (Defendant),**

v.

**R & R RIG SERVICE, LLC, Appellee (Plaintiff).**

**R & R Rig Service, LLC, Appellant (Plaintiff),**

v.

**Universal Drilling Company, LLC, a Wyoming Limited Liability Company, Appellee (Defendant).**

Nos. S–11–0079, S–11–0080.

Supreme Court of Wyoming.

March 1, 2012.

Representing Universal Drilling Company, LLC: Raymond B. Hunkins and Amanda Hunkins Newton of Hunkins Newton Law Firm, Cheyenne, Wyoming. Argument by Mr. Hunkins.

Representing R & R Rig Service, LLC: David B. Hooper of Hooper Law Offices, Riverton, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1]  R & R Rig Service, LLC (R & R) moved Universal Drilling Company, LLC's (Universal) drilling rig in May 2007 under a time and materials contract. Universal refused to pay R & R's invoice, claiming that it should only have to pay the amount it paid to have the rig moved a few weeks later by a different company. R & R brought suit for payment for the services it rendered, and Universal counterclaimed on the basis of fraud and breach of the implied covenant of good faith and fair dealing. The district court held a bench trial and generally ruled in favor of R & R and against Universal, although it refused to grant R & R's request for pre-judgment interest. Both parties appealed. We affirm in part and reverse and remand in part.

## ISSUES

[¶ 2]  In Case No. S-11-0079, Universal challenges the district court's judgment in favor of R & R on the following grounds:

1. Did the trial court adopt an erroneous methodology for calculating the amount due to R & R for the rig move when it superimposed its determination of "reasonableness" rather than the appropriate methodology for calculating damages under a time and materials contract?

2. Did the trial court make a clearly erroneous ultimate finding that fraud in the execution and fraud in the inducement had not been proven when its basic findings included findings constituting a concurrence of several indicia or "badges" of fraud?

3. Did the trial court reach an incorrect conclusion that breach of the implied covenant of good faith and fair dealing was not proven where the trial court's findings supporting that conclusion showed that R & R systematically and

pervasively overcharged Universal and then sought to enforce its invoice containing those overcharges for over two years without any attempt to reconcile its own records until this matter went to trial?

4. Did the trial court erroneously fail to consider Universal's affirmative defense of estoppel?

5. Do the computational and arithmetical errors in the trial court's findings related to R & R's daily work tickets render the trial court's determination of the amount due to R & R for the rig move clearly erroneous?

R & R restates the issue generally as:

Are any of the trial court's findings entered in this matter clearly erroneous and was the judgment rendered a correct application of the law?

In Case No. S–11–0080, R & R articulates the following issue:

Was it error and abuse of discretion for the trial court judge to refuse to award prejudgment interest on any part of the amount the trial court found was due and owing R & R Rig Service by Universal Drilling Company, LLC?

Universal states the issue as:

In a payment dispute arising from an oral, time and materials contract where the evidence showed multiple billing discrepancies and the trial court itself undertook the task of reconciling the plaintiff's billing records, was it an abuse of discretion for the trial court to refuse to award prejudgment interest on an amount tendered by Universal but refused by R & R, given the record in this case?

## FACTS

[¶ 3] In May 2007, Universal employed R & R to move its drilling rig in Washakie County on a time and materials basis. R & R hired two subcontractors for the move— CC & T Trucking, which was affiliated with R & R because it had common ownership, and DFI, which was an independent company. R & R equipment operators prepared daily work tickets, showing the equipment in use, personnel, work activities and hours worked. R & R co-owner Randy Woodward supervised the move and prepared tickets for his own work and also for subcontractor DFI. Mr. Woodward and the other operators presented their tickets to the Universal supervisors at the end of each day for signature, acknowledging "that the personnel and equipment were actually on site and working." DFI also prepared its own tickets and invoiced R & R after the move.

[¶ 4] The move took seven days, from May 7 through May 14, 2007. On May 15, 2007, R & R bookkeeper Sharon Mosbrucker prepared an invoice for the Universal move, using R & R's daily work tickets. She added in the applicable hourly rates for equipment and personnel and totaled the amount due for each ticket. Neither the DFI work tickets nor R & R's employee time sheets were available when she prepared the invoice. R & R invoiced Universal a total of $208,616.50 for the move.

[¶ 5] Before Universal paid R & R, it arranged for the rig to be moved again. This time, Universal requested bids, and another rig moving company, Bar S, bid $65,000 plus crane charges to move the rig. Universal employed Bar S, and its final bill for the second rig move was $97,499.

[¶ 6] Universal tendered a check to R & R in the amount of $97,500 as full payment for R & R's services in moving the rig. Universal stated it considered $97,500 "the fair value" for R & R's rig moving services based upon the amount billed by Bar S. R & R refused Universal's tender and demanded full payment on the invoice, plus interest.

[¶ 7] When Universal refused to pay the invoiced amount, R & R brought suit seeking full payment. Universal counterclaimed for fraud and breach of the implied covenant of good faith and fair dealing. It also asserted estoppel as an affirmative defense to R & R's claim. The matter was heard in a bench trial in June 2010. The district court considered extensive evidence of the charges and costs associated with the move, including R & R's and DFI's daily tickets and R & R's employee time sheets. The district court carefully compared all of the documentation, considered the witness testimony and ordered Uni-

versal to pay R & R $188,301.50 for the time and materials associated with the rig move. The district court stated that it considered that amount to be "the reasonable value of the services rendered to Universal. . . ." The district court also ruled against Universal on its fraud and breach of the implied covenant of good faith and fair dealing claims, but it did not directly address Universal's estoppel defense. The district court denied R & R's request for prejudgment interest. Both parties appealed.

## STANDARD OF REVIEW

[¶ 8] The district court held a bench trial in this case. Accordingly, we apply the following standard of review:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Mullinnix LLC v. HKB Royalty Trust*, 2006 WY 14, ¶ 12, 126 P.3d 909, 916 (Wyo.2006) (citations omitted).

> [W]e assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts[.]

*Comet Energy Servs., LLC v. Powder River Oil & Gas Ventures, LLC*, 2010 WY 82, ¶ 9, 239 P.3d 382, 386 (Wyo.2010), quoting *Cook v. Eddy*, 2008 WY 111, ¶ 6, 193 P.3d 705, 708 (Wyo.2008). The district court's conclusions of law are reviewed *de novo*. *Lieberman v. Mossbrook*, 2009 WY 65, ¶ 40, 208 P.3d 1296, 1308 (Wyo.2009).

## DISCUSSION

### A. *Damages*

[¶ 9] Two of Universal's issues pertain to the district court's calculation of damages. In its first issue, Universal claims that the district court incorrectly superimposed a "reasonableness" standard rather than appropriately calculating damages under the parties' time and materials contract. In its fifth issue, Universal claims that the district court's findings with regard to damages were clearly erroneous because of computational errors and because the district court did not adopt, in their entirety, the calculations presented by R & R in a revised invoice admitted into evidence at trial.

[¶ 10] Universal challenges the district court's reference to the "reasonable value" of R & R's services in its decision, as reflected in Finding of Fact No. 95:

> 95. This Court finds that the reasonable value of the services rendered to Universal and the amount owed to R & R is the sum of $188,301.50.

Universal also challenges Conclusion of Law No. 2:

> 2. That Plaintiff is entitled to recover the reasonable charges for labor, equipment usage, and materials used in the move of Defendant Universal's rig. That Plaintiff has demonstrated to the Court that the reasonable value of the services provided to Universal is in the sum of $188,301.50.

Universal contends these rulings demonstrate that the district court improperly resorted to a standard of "reasonable value" to compute the damages. It claims that the court's determination of the reasonable value of R & R's services was not "material to its decision, although the [c]ourt made it so."

[¶ 11] The district court found that the parties had entered into a time and materials contract, and its decision included a careful breakdown of each of Universal's charges and comparison of them to the employee time sheets and subcontractor work tickets. Mr. Woodward and Ms. Mosbrucker both testified about the documentation. There is no indication in the decision that the

district court somehow adjusted the final amount of damages to reflect a "reasonable" value, as opposed to the actual value of the time and materials calculated from the testimony and documentation.

[¶ 12] Furthermore, "[p]roven actual costs in contract claim cases are presumed reasonable...." *Frost Constr. Co. v. Lobo, Inc.*, 951 P.2d 390, 398 (Wyo.1998). *See also, Garrison v. CC Builders, Inc.*, 2008 WY 34, ¶¶ 30–37, 179 P.3d 867, 875–77 (Wyo.2008) (holding that the district court did not commit clear error in calculating the "reasonable" amount due on a cost plus contract by considering documents and expert testimony addressing the construction costs and calculating a total "reasonable" cost by adding up numerous "subcosts"). The district court's order indicates it determined the costs of R & R's actual time and materials and then simply concluded the total amount was reasonable. That conclusion is consistent with the presumption that actual costs are reasonable. Universal has not convinced us the district court employed an improper methodology in calculating damages.

[¶ 13] In its fifth issue, Universal challenges the district court's arithmetic in Findings of Fact 44, 51, 61, and 68. R & R does not respond to Universal's arguments individually, but simply states there were no errors. After reviewing the record and the district court's findings in light of Universal's contentions, we conclude there were some minor computational errors that should be corrected. Finding of Fact No. 44 stated:

44. Exhibit 2.13, dated 5–08–07, is ticket no. 4623 showing a total of $4,550.00.... The Court finds R & R over-billed Universal on this ticket, bed truck $205.00, swamper $630.00 and per diem $125.00 for a corrected total of **$5,670.00** (bold in original).

It is clear the district court erred by failing to subtract the overbilled amounts from the ticket total. Because this error involves a simple arithmetic correction, we conclude the correct amount of the ticket should have been $3,590, i.e., $4,550 minus $960 in total overbilled amounts.

[¶ 14] Finding of Fact No. 51 stated:

51. Exhibit 2.20, dated 5–09–07 is ticket no. 3900 showing a total of $8,680.00. This ticket was prepared by "RW" (Randy Woodward) and bears the signature of Richard Parks. The number[s] in the "amount" and "total" columns were inserted by Sharon Mosbrucker after the ticket was prepared and presented to Richard Parks for signature. Universal is charged on the R & R daily work ticket (2.20) for the DFI # 29 truck for 13 hours. However, on the DFI daily work ticket (ee 7) the DFI [# ]29 truck is charged to R & R for 12 hours. In addition, Universal is also charged for 13 hours for a swamper for this unit. However, on the DFI daily work ticket to R & R there is no "swamper" charged. In addition, Universal is charged on the R & R daily work ticket for the DFI truck # 34 for 9 hours. However, on the DFI daily work ticket to R & R (ee 9), R & R has been charged for only 7.5 hours for truck # 34. In addition, on the R & R ticket to Universal (2.20) a "swamper" for this unit is also charged to Universal for 9 hours but on the DFI daily work ticket to R & R (ee 9) the swamper is only charged for 7.5 hours. On the R & R work ticket (2.20) to Universal (and on the invoice, Ex. 1), the DFI forklift loader is represented to have worked 13 hours. However, on the DFI daily work ticket to R & R (ee 8), R & R is only charged for 11.5 hours of time for the fork lift loader. This Court finds that R & R over-billed Universal on this ticket, haul truck $160.00, swamper $585.00, bed truck $307.50, forklift loader $270.00, for a corrected total of **$7,357.50**.

[¶ 15] Universal argues that the district court's total does not account for the 1 ½ hour overcharge of the swamper (laborer) for DFI truck # 34. In Finding of Fact No. 28, the district court concluded that the proper hourly rate for a swamper was $45, and Universal does not dispute this hourly rate. The last sentence of Finding of Fact No. 51, includes a reduction for swamper charges of $585, or 13 hours of swamper time. That amount corresponds to the incorrect inclusion of swamper time on DFI truck # 29, but, as pointed out by Universal, it does not include the additional 1 ½ hours of swamper

time incorrectly charged on DFI truck # 34. As such, the total should have been reduced by 1 ½ swamper hours at $45 per hour, or $67.50, for a corrected total on that ticket of $7,290.

[¶ 16]   Universal claims the district court incorrectly failed to deduct improper per diem charges in Finding of Fact No. 61. This argument involves more than a mathematical error because the district court did not address per diem charges at all in Finding of Fact No. 61. Although Universal outlines the per diem charges on the ticket and states that R & R overcharged by $500, it does not provide a sufficient explanation of how the failure to deduct the per diem amounts was clear error in light of the entire record. We, therefore, reject Universal's argument in this regard.

[¶ 17]   In Finding of Fact No. 68, the district court addressed Exhibit 2.37, which was ticket No. 3902 dated 5-11-07. The district court concluded that Universal had overbilled two per diem amounts of $125, totaling $250. It did not, however, subtract that amount from the ticket total. We agree with Universal that the ticket should be reduced by $250, for a total of $12,130.

[¶ 18]   Universal also makes a general argument that the district court erred by failing to incorporate all of R & R's admitted billing errors into its decision. This argument is based upon R & R's Exhibit 20, which was admitted at trial without objection by Universal. Exhibit 20 was a revised invoice prepared by Ms. Mosbrucker shortly before trial, in which she reconciled the original invoice with R & R employee time sheets and the invoice/work tickets received from subcontractor DFI after R & R had already invoiced Universal for the rig move. In Exhibit 20, R & R identified billing mistakes in the original invoice totaling over $16,000.

[¶ 19]   Universal claims the district court erred by failing to include R & R's "admissions" of billing mistakes in Exhibit 20 in several of its findings of fact. It argues that because the parties agreed to amend the pleadings to conform to the evidence presented at trial, which included the admitted billing mistakes outlined in Exhibit 20, the district court should have simply adopted Exhibit 20 as part of its decision.

[¶ 20]   Universal ignores the fact that the district court had many documents to consider in making its final decision. The district court reconciled the information from all of those documents to determine the amount owed to R & R for the rig move. It referred to Exhibit 20, along with many other exhibits in its decision, in some instances adopting the numbers included in Exhibit 20 and in other instances choosing to rely on other information. Universal does not provide an analysis demonstrating that the district court's individual findings were clearly erroneous, but just points out that they do not comport with Exhibit 20. Because Universal has not convinced us the district court erred by weighing all of the evidence before it, including Exhibit 20 and the other exhibits, we will not set aside its findings. *See Garrison,* ¶¶ 34–37, 179 P.3d at 876–77 (concluding that the district court did not err in calculating damages by using different numbers derived from the evidence than the plaintiffs would have preferred).

### B.   Fraud

[¶ 21]   We reviewed the requirements for proving a fraud claim in *Excel Constr., Inc. v. HKM Engineering, Inc.,* 2010 WY 34, ¶ 33, 228 P.3d 40, 48–49 (Wyo.2010) (some citations omitted):

> The elements of intentional misrepresentation or fraud are as follows:
>
> > (1) the defendant made a false representation intended to induce action by the plaintiff; (2) the plaintiff reasonably believed the representation to be true; and (3) the plaintiff relied on the false representation and suffered damages.
>
> In order to prove intentional misrepresentation, the plaintiff must show that the misrepresentation was made intentionally, with knowledge of its falsity, or that the maker of the misrepresentation was at least aware that he did not have a basis for making the statement. Fraud must be proven by clear and convincing evidence, as opposed to by a preponderance of the evidence for negligent misrepresentation

claims. Fraud must be pled with particularity. W.R.C.P. 9(b).

[¶ 22] The district court found that Universal had failed to establish any of the elements of fraud by clear and convincing evidence. Finding of Fact No. 92 addresses Universal's fraud claim:

92. This Court finds that there is not clear and convincing proof of fraud in this case. The invoice was created the day following completion of the rig move from Mr. Woodward's daily time records of which Universal had a copy ... There is no doubt that Mr. Woodward is inept in keeping tabs on his worker hours and equipment time on the job but the Court cannot equate that to an intention to defraud. There is no evidence of a false representation intended to induce action by Universal. There can therefore be no evidence of reliance on that false representation and thus no damages suffered. The reasonable cost of moving the Universal rig was a moving target throughout the move and the costs of the move depended on the readiness of the move, the changes requested during the move (i.e. additional welding done to make future moves less expensive, and hauling materials and equipment to Riverton, etc.) and the facts and circumstances of the move, on the ground, on a day by day basis. Universal was aware from the outset that large and expensive pieces of equipment were to be used to move this rig. It also had men in the field validating the daily time records of men and equipment involved each day. Universal is [a] company experienced in hiring rig movers. Universal cannot now be heard to complain that they should have asked for a bid or should have hired a different company. The fact that this move was more expensive than the one two weeks lat[ ]er is not remarkable given the circumstances. It is made less remarkable when you factor in the difference between a "time and materials" contract and a bid contract. The oil industry is replete with "do it now, the hell with the cost" attitudes. Each party had in place the personnel to keep this issue from happening. Universal does not now get to rewrite its contract with R & R because it got a better deal elsewhere.

[¶ 23] Universal claims there were a number of "badges" of fraud in this case and the district court clearly erred by failing to recognize that those badges proved R & R had committed fraud. Universal directs us to *Butcher v. Butcher (Matter of Estate of Reed)*, 566 P.2d 587, 590–91 (Wyo.1977) (citations omitted) as support for its badges of fraud argument:

Since it is impractical to look into a person's mind to ascertain his intention, it is necessary to consider surrounding circumstances. Since it is most difficult to prove intent by direct evidence, circumstantial evidence is necessary. The issue of actual fraud is commonly determined by recognized indicia, demonstrated badges of fraud, which are circumstances so frequently attending fraud; a concurrence of several will make out a strong case and be the circumstantial evidence sufficient to sustain a court's finding.

*Butcher* recognizes the reality that, many times, there will be no direct evidence of a party's intent to defraud; consequently, a court must look at the circumstantial evidence to determine whether a fraudulent intent existed or not.

[¶ 24] Universal claims several "anomalies" support a finding of fraud in this case. First, it points to the fact that Ms. Mosbrucker added certain information like the rates/prices and totals to the tickets after Universal personnel had already signed the tickets. The district court addressed this procedure in Findings of Fact Nos. 30 and 31:

30. Upon completion of the Universal rig move R & R personnel provided copies of their daily tickets to Ms. Mosbrucker who added the price, amount and totals where needed but she did not add any hours for equipment, services or manpower or per diem not already shown on the tickets in coming up with the final bill to Universal. She did send to Universal along with the invoice the finalized daily tickets.

31. Copies of the non-finalized tickets had already been provided to the [Univer-

sal] company man on the day they were signed in the field. Universal claims not to have the non-finalized copies of the daily tickets generated and presented to the company man in the field.

[¶ 25] Richard Parks was Universal's tool pusher during the rig move, and his video deposition was shown at trial. He confirmed that he had signed most of the daily tickets during the move, thereby substantiating R & R activities and hours for each day. Mr. Parks stated that he would have objected and refused to sign if he disagreed with the information on the tickets. Ron Coats was Universal's driller during the R & R rig move. Although two of the tickets purported to bear his signature, he denied signing any of the tickets. He testified, however, that it was not unusual for prices and totals to be added in the office because the field workers do not know the rates being charged for their services.

[¶ 26] Consistent with Mr. Parks' and Mr. Coats' testimony, the district court held that the daily ticket procedure used by R & R allowed Universal to validate the daily time records for the men and equipment involved each day in the field. On this record, the district court did not clearly err by refusing to assign any nefarious intent to R & R as a result of the daily tickets not being fully completed in the field before they were presented to Universal personnel for signature.

[¶ 27] The second anomaly identified by Universal was that Mr. Parks and Mr. Coats denied signing a few of the tickets. Universal argues that the record shows the tickets were forged and "[t]he only people who had the opportunity and motive to sign the names of Parks and Coats to the tickets, worked for R & R." The district court made an express finding that it was not convinced the tickets were forged.[1] Universal has not demonstrated that the district court's finding was clearly erroneous. While Mr. Parks and Mr. Coats testified they did not sign a few tickets, there was no showing that someone from R & R in fact forged their names. Mr. Woodward tes-

tified that he did not sign Universal representatives' names to any tickets and was not aware of any of his employees having signed for Universal's personnel. The district court properly weighed the evidence before it, and its conclusion that R & R did not forge the Universal employees' names is not clearly erroneous. As such, this anomaly does not amount to a badge of fraud.

[¶ 28] The third anomaly identified by Universal was that one of the tickets, Exhibit 2.6, bore the date of 5–7–09, instead of 2007, when the job was actually accomplished. The district court noted the discrepancy, but did not assign any relevance to it. That is consistent with the record because Mr. Parks admitted to signing Exhibit 2.6. There is no basis for deriving a fraudulent intent on the part of R & R based upon the incorrect date.

[¶ 29] The remaining "anomalies" identified by Universal pertain to overcharges on R & R's daily tickets. The district court addressed each of the tickets in its decision and made changes to the amounts due to reflect errors on the tickets. The district court did not commit clear error by correcting the overcharges or by failing to conclude that the errors demonstrated fraud. As the district court stated in Finding of Fact No. 92, Mr. Woodward was "inept" at keeping track of the workers and equipment on the job, but that did not mean R & R intentionally misrepresented the hours, equipment or other charges on the tickets.

[¶ 30] Moreover, the record demonstrates that not all of R & R's billing errors were in its favor. For example, Exhibit No. 2.1 was the daily ticket for Richard Cantrell and his swamper, Ron Schultz, on May 7, 2007. The daily ticket, which was used by Ms. Mosbrucker to prepare the invoice, showed that each man worked 10 hours that day and that time was charged to Universal. However, Mr. Cantrell's and Mr. Schultz's time sheets, which R & R used to pay them, indicated they each actually worked 10 ½ hours on the "Worland rig move" that day. There are other tickets and time sheets showing instances where R & R employees reported

---

1. Universal and the district court had different totals for the number of allegedly forged tickets. Universal claims there are six such tickets, while the district court concluded there were only two alleged forgeries. The difference in numbers does not affect our decision.

working more hours than were charged to Universal. The district court recognized instances of R & R billing less than was shown on the employee time sheets in several findings of fact. However, no adjustments were made in favor of R & R, and Mr. Woodward testified at trial that he did not expect to be paid for the instances of under-billing. Consequently, by failing to reconcile the employee time sheets with the daily tickets, R & R missed some time that presumably could have been billed to Universal. The fact that errors were made both against and in favor of Universal further indicates that R & R did not intentionally make false representations in the invoice. The district court did not commit clear error by concluding Universal had failed to present clear and convincing evidence of false representations.[2]

■ [¶ 31] Looking to the other elements of a fraud claim, Universal was also required to prove that it believed the alleged misrepresentations were true and relied upon them to its detriment. Universal did not pay the invoice which included the overcharges. Thus, there is no showing that Universal relied upon any alleged fraudulent statements in the daily tickets or invoice. The district court's ruling that Universal did not meet its burden of proving reliance is not clearly erroneous.

[¶ 32] Universal also claims R & R committed fraud in the inducement based on the following finding by the district court:

8. In soliciting the business from Universal's Rig Superintendent John Hancock in a local laundromat, R & R's co-owner and manager, Randy Woodward represented to Universal that R & R was honest, trustworthy, and competitive, and that its fees would be fair and reasonable. Universal was interested in establishing a relationship with a local rig moving company since it was new to the Wyoming area.

[¶ 33] Universal directs us to *Sundown, Inc. v. Pearson Real Estate Co.*, 8 P.3d 324 (Wyo.2000) as authority for its argument that R & R committed fraud in the inducement. In that case, Sundown was interested in purchasing a ranch in Carbon County, and Pearson was one of the realtors involved in the transaction. Sundown claimed that Pearson fraudulently induced it to enter into a contract to purchase the property with false representations in a brochure and maps provided prior to Sundown's execution of the purchase contract. Sundown asserted those materials did not properly describe the impact of coal mining operations on the ranch lands. We rejected Sundown's claim that the maps and brochure contained fraudulent misrepresentations, in part because the statements in the brochures were opinions rather than statements of facts. *Id.* at 327, 330–31. We stated that "any false representation must relate to a matter of fact rather than of opinion." *Id.* at 331.

■ [¶ 34] The *Sundown* decision does not support Universal's argument that R & R committed fraud in the inducement. Mr. Woodward's statement that R & R was honest, trustworthy and competitive and its fees would be fair and reasonable are matters of opinion rather than fact. Each of those descriptors is subjective, rather than objective, and could change from person to person or job to job. Moreover, the district court's findings indicate that the opinions were not necessarily false. With regard to whether the company was competitive and its fees were fair and reasonable, Universal does not question the reasonableness of the rates charged by R & R. The district court concluded that, after reducing the invoice amount by approximately $20,000 (the $208,515.50 invoiced less the $188,301.50 judgment), the total charge for the rig move was reasonable.[3] With regard to whether R

---

2. Universal also argues that the following aspects of Finding of Fact No. 92 were clearly erroneous: 1) Universal was experienced at hiring rig movers; and 2) "[t]he oil industry is replete with 'do it now, the hell with the cost' attitudes." Even if we assume, for the sake of argument, that these statements were not supported by the record, they do not warrant a conclusion that the district court's ultimate finding that Universal had not

proven fraud was clearly erroneous. Neither of those statements pertain directly to the elements of a fraud claim. They were clearly extraneous to the district court's decision and, therefore, do not provide a basis for reversal.

3. Even including the minimal adjustments to the judgment noted above, the difference between

& R was competitive, the district court found the R & R rig move could not be compared with the Bar S move because the Bar S move was a bid job and there were different circumstances involved with the R & R move, including additional work performed. As such, this record does not demonstrate that R & R was not competitive or that its fees were not fair and reasonable. Concerning Mr. Woodward's representation that R & R was honest and trustworthy, the district court found that, while Mr. Woodward was inept at keeping track of the costs of the job, there was no fraud associated with the billing. The obvious implication of this finding is that R & R may have been negligent in its billing practices, but it did not fail to act in an honest or trustworthy manner.

[¶ 35] In addition, the evidence did not clearly demonstrate that the decision to hire R & R was based in significant part on Mr. Woodward's statements. As we stated above, to prove a fraud claim the injured party must establish by clear and convincing evidence that it relied upon the false representation. To that end, the injured party must show that the false representation pertained to a material fact. *Dewey v. Wentland*, 2002 WY 2, ¶ 20, 38 P.3d 402, 412 (Wyo.2002). Mr. Hancock testified that he related Mr. Woodward's statements to his supervisor, Ken McKinney in Denver, Colorado, who participated in the decision to hire R & R. However, Mr. McKinney died before the lawsuit was filed in this case so there is no evidence showing that he relied on Mr. Woodward's statements or that they were material to the decision to hire R & R. Interpreting the evidence in favor of R & R in accordance with our standard of review, we conclude the district court did not commit clear error in ruling that Universal had failed to prove its fraud claim.

### C. Implied Covenant of Good Faith and Fair Dealing

[¶ 36] Universal claims R & R's pervasive overbilling and failure to reconcile the original invoice with its employees' time sheets and DFI's work tickets constituted breach of the implied covenant of good faith and fair

dealing. The district court concluded that R & R had not breached the implied covenant.

[¶ 37] In *Scherer Constr., LLC v. Hedquist Constr., Inc.*, 2001 WY 23, ¶ 24, 18 P.3d 645, 655 (Wyo.2001), we adopted a good faith obligation for contracts in accordance with the Restatement (Second) of Contracts, § 205. Section 205 states:

Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.

The comments to § 205 provide the following definitions:

**Comment:**

*a. Meanings of "good faith."* Good faith is defined in Uniform Commercial Code § 1–201(19) as "honesty in fact in the conduct or transaction concerned." ... The phrase "good faith" is used in a variety of contexts, and its meaning varies somewhat with the context. Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving "bad faith" because they violate community standards of decency, fairness or reasonableness. The appropriate remedy for a breach of the duty of good faith also varies with the circumstances.

. . . .

*d. Good faith performance.* Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to

the invoiced amount and the final judgment is only ten percent (10%).

cooperate in the other party's performance.

> Restatement (Second) of Contracts, § 205 (1981); *see also* 13 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 38:15 (4th Ed. 2000).

*Id.*, ¶ 18, 18 P.3d at 653.

[¶ 38] We summarized the good faith obligation in the context of commercial contracts in *City of Gillette v. Hladky Constr., Inc.*, 2008 WY 134, ¶ 30, 196 P.3d 184, 196 (Wyo. 2008) (citations omitted).

> Under Wyoming law, the implied covenant requires that neither party to a commercial contract act in a manner that would injure the rights of the other party to receive the benefit of the agreement. It requires the parties to act in accordance with their agreed common purpose and each other's justified expectations. A breach of the implied covenant occurs when a party interferes or fails to cooperate in the other party's performance.

[¶ 39] Universal's claim that R & R failed to meet its justified expectations by overcharging and failing to reconcile the records to identify billing errors before sending out the invoice is not supported by the record. The district court found that Universal's initial refusal to pay R & R's bill was not "because of any perceived errors in R & R's billings but because Bar S did it cheaper." We agree that Universal had the right to reasonably expect that R & R would not knowingly overcharge on the time and materials contract. However, Universal's reason for refusing to pay R & R's invoice was not because there were errors in R & R's billing, but because Bar S charged less. Any efforts to reconcile the invoice with the other relevant documentation, which, consistent with the district court's findings would have reduced the total bill by approximately ten percent, would not have satisfied Universal because it wanted to pay R & R the amount it had paid Bar S and no more. On this record, R & R's actions did not fail to meet Universal's justified expectations or undermine the parties' common purpose of moving the rig on a time and materials basis.

[¶ 40] In addition, to establish breach of the implied covenant of good faith and fair dealing, the injured party must demonstrate the other party acted in "bad faith" by violating community standards of decency, fairness or reasonableness, and when the allegation pertains to the performance under a contract, the injured party must demonstrate some type of misconduct. Restatement of Contracts (Second) § 206, comments a. and d. For example, in *Hladky*, ¶¶ 35–37, 196 P.3d at 197–98, the City of Gillette violated the covenant by acceding to the architect's improper oral modification of the contract, which delayed Hladky's ordering of required materials for the construction job, and by failing to act on a change order until after the scheduled deadline had passed. These actions were taken with knowledge that they made it impossible for Hladky to perform under the contract. Here, the district court ruled that R & R did not intentionally overcharge. Universal does not direct us to any authority stating that unintentional mistakes in billing are enough to establish the requisite bad faith or lack of fair dealing. The district court properly ruled R & R did not breach the implied covenant of good faith and fair dealing.

[¶ 41] Universal also claims that R & R was obligated to reconcile its invoice with the other documentation during the litigation of this matter and its failure to do so constituted bad faith. It relies upon Restatement § 205, comment e for this argument. That comment states, in relevant part: "The obligation of good faith and fair dealing extends to the assertion, settlement and litigation of contract claims and defenses." The problem with Universal's argument is that this Court ruled in *Roussalis v. Wyo. Med. Center, Inc.*, 4 P.3d 209, 257 (Wyo.2000) that Wyoming would not follow comment e and litigation conduct would not be considered in a bad faith claim. We stated that the Rules of Civil Procedure control the litigation process and provide adequate remedies for improper conduct. *Id.; See also, Ultra Resources, Inc. v. Hartman*, 2010 WY 36, ¶ 90, 226 P.3d 889, 921 (Wyo.2010). R & R was obligated to provide the information necessary to reconcile its billings during the litiga-

tion, to the extent required by the discovery rules. Universal makes no argument that R & R failed to comply with its discovery obligations or that the district court erred in making any discovery rulings. Therefore, R & R's failure to reconcile its invoice with the other documentation until shortly before trial[4] is not actionable under the covenant of good faith and fair dealing. The district court properly denied Universal's claim for breach of the implied covenant of good faith and fair dealing.

### D. Estoppel

[¶ 42] Universal pled estoppel as an affirmative defense to R & R's breach of contract claim. The district court did not specifically rule on Universal's estoppel defense and Universal claims it erred by failing to conclude that R & R was estopped from asserting its claim against Universal.

[¶ 43] We have described the doctrine of equitable estoppel as follows:

> " 'Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded from asserting rights which might otherwise have existed as against another person who has in good faith relied upon such conduct and has been led thereby to change his position for the worse.' " *Snake River Brewing Co., Inc. v. Town of Jackson*, 2002 WY 11, ¶ 28, 39 P.3d 397, 407–08 (Wyo.2002) (*quoting State Farm Mut. Auto. Ins. Co. v. Petsch*, 261 F.2d 331, 335 (10th Cir.1958)). "Equitable estoppel arises only when a party, by acts, conduct, or acquiescence causes another to change his position." *Roth v. First Sec. Bank of Rock Springs*, Wyo., 684 P.2d 93, 96 (Wyo.1984). The elements of equitable estoppel are a lack of knowledge, reliance in good faith, and action or inaction that results in an injury. *Id.*

*Parkhurst v. Boykin*, 2004 WY 90, ¶ 21, 94 P.3d 450, 460 (Wyo.2004). *See also, Mullinnix*, ¶ 32, 126 P.3d at 922–23.

[¶ 44] The elements of equitable estoppel include reliance principles much like those included in a fraud claim. Given the district court concluded generally that R & R did not commit fraud and specifically that Universal did not rely on any false representations made by R & R, it is clear it also would have denied Universal's estoppel defense. We have affirmed the district court's ruling on the fraud issue. Accordingly, we reject Universal's argument that the district court should have ruled R & R was estopped from asserting its claim for payment.

### E. Prejudgment Interest

[¶ 45] In its cross-appeal, R & R claims the district court erred by refusing to award it prejudgment interest, at least on the $97,500 which Universal admitted it owed for the rig move. Universal argues the district court properly refused to award prejudgment interest because the amount owed was not a sum certain and was not easily ascertainable and the "equities mandate" against such an award.

[¶ 46] Prejudgment interest is a proper element of a damages award when the claim is "liquidated." A claim is considered liquidated when it "is readily computable by basic mathematical calculation." *Pennant Serv. Co. v. True Oil Co.*, 2011 WY 40, ¶ 36, 249 P.3d 698, 711 (Wyo.2011), citing *Stewart Title Guar. Co. v. Tilden*, 2008 WY 46, ¶ 21, 181 P.3d 94, 101–02 (Wyo.2008). The theory behind allowing prejudgment interest is to fully compensate an injured party for its loss. It is intended to reimburse the injured party for the loss of use of the owed money during the period between the accrual of the claim and the date of judgment. *Id; Stewart Title*, ¶ 28, 181 P.3d at 103–04 (citing 44 Am.Jur.2d *Interest and Usury* § 39 (2007)). *See also, Rissler & McMurry Co. v. Atlantic Richfield Co.*, 559 P.2d 25, 32 (Wyo. 1977).

> The general principle is that " 'he who retains money which he ought to pay to

---

**4.** Universal refers repeatedly to R & R's Exhibit 20 which, as we explained above, was the revised invoice prepared by Ms. Mosbrucker and introduced into evidence at trial. Universal professes outrage that R & R would wait until just before trial to present this information. However, Universal made no claim that R & R had not complied with its discovery obligations and, in fact, offered no objection to the admission of Exhibit 20 at trial.

another should be charged interest upon it.'" 5 Arthur Linton Corbin, *Corbin on Contracts*, § 1046, at 280 n. 69 (1964). The successful claimant is compensated for the lost "use value" of the money owed. *Hansen v. Rothaus*, 107 Wash.2d 468, 730 P.2d 662 (1986). That is, an award of prejudgment interest is in the nature of preventing the unjust enrichment of the defendant who has wrongfully delayed payment. See 1 Dan B. Dobbs, *Law of Remedies*, 3.6(3), at 348–49 (2d ed. 1993) ("in many cases the interest award is necessary to avoid unjust enrichment of a defendant who has had the use of money or things which rightly belong to the plaintiff").

*Pennant*, ¶ 37, 249 P.3d at 711–12.

■ [¶ 47] Indicating that it did not consider R & R's claim to be liquidated, the district court ruled that R & R was not entitled to prejudgment interest "[d]ue to the errors in billing and the fact that no agreed upon rates were set for equipment usage, labor and materials." In *Rissler*, 559 P.2d at 32–33, this Court ruled that an amount due on a paving contract which was calculated after the project was completed using the actual materials provided and an agreed upon unit cost was liquidated for the purposes of awarding prejudgment interest. We stated that it is the character of the claim rather than the defense that determines whether the amount in dispute is liquidated. "[T]he existence of a dispute over the whole or part of the claim should not change the character of the claim from one for a liquidated, to one for an unliquidated sum . . . .'" *Rissler*, 559 P.2d at 33, quoting McCormick on Damages, § 54, 215–16. In other words, "a mere difference of opinion as to the amount due or as to liability does not preclude prejudgment interest if the amount sought to be recovered is a sum certain and the party from whom payment is sought receives notice of the amount sought." *Wells Fargo v. Hodder*, 2006 WY 128, ¶ 61, 144 P.3d 401, 421 (Wyo.2006), discussing *Laramie Rivers Co. v. Pioneer Canal Co.*, 565 P.2d 1241, 1245 (Wyo.1977).

[¶ 48] However, *United Pacific Ins. Co. v. Martin and Luther General Contractors, Inc.*, 455 P.2d 664, 677 (Wyo.1969) demon-strates that there are cases where factual disputes over various aspects of a claim are so significant, they render the claim unliquidated. *United Pacific* involved a complex construction contract and lien case with numerous accounting issues. Ruling the district court erred by concluding the claim was liquidated and allowing prejudgment interest, we explained:

> It could hardly be said that a claim such as that exhibited in the controversy here which required weeks to try and which presented myriad, perplexing problems arising out of the loosest kind of arrangement between the contractor and subcontractor showed a claim which was readily computable by simple mathematical calculations.

*Id.* (citation omitted).

■ [¶ 49] We agree that the total amount awarded as damages in this case was not liquidated due to the numerous billing errors and the expansive review of the record which was required for the district court to calculate the judgment amount. This case is, therefore, similar to *United Pacific* because it presented "myriad, perplexing problems" associated with calculating the final judgment. Nevertheless, R & R argues it should have at least been awarded prejudgment interest on the amount Universal conceded was owed based upon the cost of the Bar S move—$97,500. On August 8, 2007, Universal tendered payment for $97,500, and Universal's general counsel made the following statements in the accompanying letter:

> Enclosed is my client's check for $97,500.00. This is the fair value of . . . R & R's services in moving my client's rig from one site to another last May. This is validated by the attached invoice from Bar S Inc. for $97,499.00 for a nearly identical move of the same rig. The check is restrictively endorsed to conclude all our dealings with this one payment[.]

The amount for which R & R is requesting prejudgment interest, therefore, was not only known to Universal but was actually proposed by it, making the amount both a "sum certain" and "readily ascertainable."

[¶ 50] *Crest, Inc. v. Costco Wholesale Corp.*, 128 Wash.App. 760, 115 P.3d 349 (2005), and *Board of Works of Lake Station v. I.A.E., Inc.*, 956 N.E.2d 86 (Ind.Ct.App.2011)provide valuable guidance in this case. In *Crest*, the defendant general contractor acknowledged that it owed the plaintiff subcontractor money but would not pay prior to the judgment because the subcontractor refused to sign a general release. The court held the general contractor should have paid the money into the court and, since it did not, the subcontractor was entitled to prejudgment interest to compensate it for the lost use of the money. *Crest*, 115 P.3d at 356–57. In *Lake Station*, I.A.E., an engineering firm, sued Lake Station seeking payment for engineering services on a road and bridge construction project that was eventually abandoned by the city. *Id.* at 89–90. The Indiana court of appeals ruled that a pre-litigation letter written by Lake Station's mayor, acknowledging that the City owed a certain amount to the engineering firm, was a sufficient basis to award prejudgment interest on that amount. *Id.* at 96.

[¶ 51] As in *Crest* and *Lake Station*, Universal acknowledged that it owed R & R a certain amount for its services. Similar to *Crest*, Universal refused to pay the amount it believed was owed unless R & R would accept that amount as payment in full. By refusing to pay the undisputed amount, Universal denied R & R the use of the money it was unquestionably owed during the four years of protracted litigation.[5] The lost use of that sum of money is a very real damage suffered by R & R for which it will not be compensated unless prejudgment interest is awarded.

[¶ 52] The district court's decision simply stated that prejudgment interest was not awardable "[d]ue to errors in billing and the fact that no agreed upon rates were set for equipment usage, labor and materials...." The implication was that the court concluded the amount was not liquidated because it was difficult to determine the ultimate amount of damages owed. Considering the amount of effort the court expended in reconciling the various documents to arrive at a final judgment, it is understandable that the district court would focus on that fact. However, when the $97,500 conceded by Universal to be due is considered in light of the authority cited above, we conclude interest on that amount must be awarded to fully compensate R & R for its breach of contract damages. To do otherwise would encourage breaching parties to withhold payment of funds known to be due and payable in the hopes of coercing a settlement, in this case for approximately half of the amount ultimately awarded.

[¶ 53] Universal also argues that the district court properly exercised its discretion and recognized the relative equities when it denied R & R's request for prejudgment interest. Universal's equity argument echoes its repeated assertions that R & R committed fraud. The district court rejected Universal's fraud claim and we have affirmed that determination on appeal; consequently, we do not believe the district court relied on equitable considerations in denying R & R's request for prejudgment interest. For these reasons, we conclude R & R should be awarded prejudgment interest on the $97,500 from the date payment was offered.

## CONCLUSION

[¶ 54] The record supports the district court's judgment of $188,301.50 in favor of R & R, less the minor computation errors noted above, and we affirm its decision subject to those adjustments. In fact, the court did a masterful job of sorting through the voluminous documents and arriving at a fair value for the time and materials provided by R & R in moving Universal's rig. The district court properly ruled that Universal failed to prove R & R committed fraud or breached the implied covenant of good faith and fair dealing, and we affirm those rulings. In addition, the record does not support Univer-

---

5. We want to caution that this case has somewhat unique facts and should not be interpreted as allowing prejudgment interest in any case in which an offer is made to settle a disputed claim. Because Universal acknowledged that it owed R

& R $97,500 for its services, this case is different from cases where there is a settlement offer on disputed facts. In addition, this situation does not involve an offer of judgment, which would be governed by W.R.C.P. 68.

sal's estoppel defense. However, we conclude R & R should be awarded prejudgment interest on the amount Universal conceded it owed—$97,500. We reverse the district court's ruling on that issue and remand for further proceedings consistent with this opinion.

[¶ 55] Affirmed in part and reversed and remanded in part for further proceedings consistent with this decision.