UNITED STATES COURT OF APPEALS

August 31, 2018

TENTH CIRCUIT

SUSAN SCHNEBERGER; LACY
STIDMAN; JOHNNY TRENT,
individually and as class
representatives,

      Plaintiffs - Appellants,

v.

AIR EVAC EMS, INC., d/b/a Air Evac
Lifeteam; EAGLEMED, LLC,

      Defendants - Appellees.

No. 17-6154
(D.C. No. 5:16-CV-00843-R)
(W.D. Okla.)

ORDER AND JUDGMENT[*]

Before **HOLMES**, **MATHESON**, and **MORITZ**, Circuit Judges.

Susan Schneberger, Lacy Stidman, and Johnny Trent brought claims on

behalf of themselves and a putative class of similarly situated individuals against

air-ambulance operators in Oklahoma, alleging that the defendants charged

exorbitant rates for air-ambulance services. They claimed breach of implied

contract because the parties did not agree on a particular price before services

---

[*]     This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

were provided; therefore, the plaintiffs argued, the defendants agreed to transport the plaintiffs and their family members for a reasonable price. They also brought claims, *inter alia*, for unjust enrichment and money had and received. The district court dismissed these claims as preempted by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

# I[1]

## A

Defendants EagleMed, LLC ("EagleMed") and Air Evac EMS, Inc. ("Air Evac") operate air-ambulance services in several states, including Oklahoma. They do not dispatch their own services, but instead respond to third-party dispatch requests and requests from medical professionals or first responders.

The plaintiffs claim that they or their family members were transported by the defendants "without entering into written agreements specifying a price prior to transport." Aplts.' Opening Br. at 3. No price or schedule of prices was disclosed at the time of service. The plaintiffs claim that the defendants "do not negotiate rates with patients" or "publish their pricing model in any available platform." Aplts.' App. at 27 (Pet., dated July 26, 2016). The plaintiffs further

---

[1] In reviewing a judgment on a motion to dismiss, "[w]e accept as true all well-pleaded factual allegations in the complaint." *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013)).

2

argue that the emergency conditions under which the transportation here took place precluded any "meaningful opportunity to consent" to the terms of service. Aplts.' Opening Br. at 4.[2]

Ms. Schneberger's husband was transported 416 miles by EagleMed from Norman Regional Hospital in Norman, Oklahoma, to MD Anderson Hospital in Houston, Texas. Mr. Schneberger was insured by Blue Cross Blue Shield Association ("BCBS"), but BCBS refused to pay for EagleMed's service because it concluded that his transportation was not medically necessary. EagleMed reduced Mr. Schneberger's bill from $63,564.71 to $53,133.83. Ms. Stidman was

---

[2] In *EagleMed LLC v. Cox*, 868 F.3d 893 (10th Cir. 2017), we detailed a similar description of "the market for air-ambulance services" offered by an amicus and, notably, did not quarrel with its accuracy:

> Unlike the typical commercial airline flights that were the focus of the [ADA], air-ambulance flights generally are not chosen by their passengers, are not paid in advance at an agreed-to rate, and do not have prices that are determined in a free market of individual consumer choice. As a general rule, air-ambulance services are not requested or arranged by either the individuals who will receive the services or by the insurance companies, governmental entities, or individuals who will ultimately pay for them. Rather, air ambulances are called by medical professionals and emergency first-responders who will neither receive nor pay for their services. Their prices are determined only after the service has already been rendered—in cases paid through Medicare or Medicaid, at prices established by government rate schedules, and in cases paid through private insurance, usually at a price negotiated between the air ambulance and the insurer.

*Id.* at 902–03.

transported sixty-seven miles by EagleMed from Pittsburg County, Oklahoma, to St. John Medical Center in Tulsa, Oklahoma. Ms. Stidman's insurance paid $15,180.53 of EagleMed's charges, leaving her with a bill for $19,516.26. Mr. Trent was transported 106 miles by Air Evac from Elk City, Oklahoma, to Oklahoma City after an oilfield accident. Air Evac charged Mr. Trent $45,101.94.

The plaintiffs argue that they were charged for transportation "in an amount that vastly exceeded both the cost to provide the transport and the fair market value of the transport." Aplts.' Opening Br. at 4. The plaintiffs proffered statements by "[a]n executive of the largest air ambulance company in the industry admitt[ing] that the *fair* charge for an average transport would be $12,000" and claimed that they were charged between four and eight times that amount. *Id.* (emphasis added) (citing Aplts.' App. at 131 (Pls.' Joint Resp. to Defs.' Mot. to Dismiss, dated Dec. 20, 2016)). When the plaintiffs were unable to pay, the defendants began collection efforts that exposed the plaintiffs to "adverse judgments and damage to their credit ratings." *Id.* at 5. The defendants do not contest that the written agreements between the parties lacked an agreed-upon price. The defendants argue, however, that they are required by law to transport patients who require services regardless of their insurance coverage or ability to pay. Providing these services is expensive—requiring the defendants to maintain customized aircraft and twenty-four-hour crews—and payments received from

4

uninsured patients or patients covered by Medicaid or Medicare are, in general, "substantially below air ambulance providers' per-transport costs." Aplees.' Resp. Br. at 9. "Such underpayments contribute to escalating prices for emergency air ambulance transportation." *Id.* And in order "[t]o continue to provide air ambulance service for everyone regardless of insurance status . . . [the defendants] must receive their billed charges for a sufficient portion of their flights to offset the losses they incur when they transport uninsured or underinsured patients." *Id.* at 10.

**B**

The plaintiffs filed claims in the state District Court for Oklahoma County, Oklahoma, seeking damages and injunctive relief prohibiting the defendants from charging or attempting to collect "unreasonable rates" for their services. Aplts.' App. at 48–51. The plaintiffs presented several claims under Oklahoma law, including claims for breach of an implied contract (including breach of the implied covenant of good faith and fair dealing), unjust enrichment, and money had and received.[3] The plaintiffs argued that, due to the lack of a specified price term, the parties entered into implied contracts for services to be provided at a

---

[3] The plaintiffs also brought a claim alleging violations of the Oklahoma Consumer Protection Act, OKLA. STAT. ANN. tit. 15, § 751, but they voluntarily conceded that this claim should not go forward in their briefing responding to the defendants' motion to dismiss, discussed *infra*, and the federal district court acknowledged the concession and did not address the claim further in its dismissal order.

5

reasonable price, and the defendants breached those contracts. In the alternative, the plaintiffs sought a declaratory judgment that the contracts between the parties were "unenforceable . . . because of the lack of mutuality." Aplts.' App. at 50. The defendants removed the case to the U.S. District Court for the Western District of Oklahoma.

The defendants then moved to dismiss the complaint, arguing that all of the plaintiffs' state-law claims were preempted by the ADA. The statutory preemption provision says the following:

> Except as provided in this subsection, a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1). The defendants argued that, under the ADA, the Department of Transportation's ("DOT") regulatory mechanism provides the exclusive remedy against abusive pricing practices by airlines. The plaintiffs responded that DOT regulations provide some remedy against *misleading* advertising of prices, but that they offered no relief here because the defendants did not disclose their prices at all. Reflecting the substance of their district court argument, the plaintiffs put it this way on appeal: "If the District Court lacks authority to address Defendants' outrageous, after-the-fact pricing regime, then there is no remedy for Plaintiffs. Defendants can charge whatever they want, and no judicial or agency review constrains their unfettered discretion." Aplts.'

6

Opening Br. at 6.  The plaintiffs further argued that the defendants were estopped from claiming ADA preemption because they had sought to recover their fees in state-court actions.

Finally, the plaintiffs argued that the policy choice underlying the ADA—that is, to limit regulation in order to maximize the effects of market forces on prices in the airline services industry—was not applicable to the air-ambulance market because patients "have no way to shop for air ambulance services." *Id.*  No "market" exists, the plaintiffs argued, because there is no "opportunity for a consumer to compare competing providers based on price or other variables." *Id.*

The district court rejected the plaintiffs' arguments and granted the defendants' motion to dismiss.  At the outset of considering the defendants' preemption argument, the court concluded that it was "settled" that the defendants were "air carriers" within the meaning of the ADA, 49 U.S.C. § 41713(b)(1), and thus within the ambit of that statute's preemption protections.[4]  Aplts.' App. at

_____

[4]     The plaintiffs admit that they did not challenge the district court's determination that the defendants were "air carriers" within the meaning of the ADA, but state in their reply brief that this "tactical decision not to raise the issue was a mistake."  Aplts.' Reply Br. at 2 n.1.  Perhaps.  But it is a mistake that the plaintiffs will have to live with.  We decline to consider their arguments—presented for the first time in their reply brief—challenging the defendants' status as "air carriers."  *See Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) ("'[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief.'  We see no reason to

(continued...)

7

263 (Order, dated Mar. 15, 2017). The court then found that all of the plaintiffs'

claims were preempted by the ADA.

The court reasoned that the plaintiffs' claim for breach of an implied

contract, including a covenant of good faith and fair dealing, "at bottom" evinced

the plaintiffs' contention that "Defendants' prices are unreasonably high under

Oklahoma law." Aplts.' App. at 266. Furthermore, the court said, "it is

immaterial whether Plaintiffs package their claim as one for charging

unreasonable rates or one for failing to deal in good faith; Plaintiffs are still

alleging that Defendants breached the 'state-imposed obligation[]' to charge

---

[4](...continued)
depart from that rule here." (alteration in original) (citation omitted) (quoting
*M.D. Mark, Inc. v. Kerr–McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009))).
Furthermore, the plaintiffs' contention—made without any citation to
authority—that we "could conceivably address" their challenge to the defendants'
status as "air carriers" "even though not raised below" because they are
"jurisdictional" is wholly without merit. Aplts.' Reply Br. at 2. n.1. Jurisdiction
here does not turn on whether the defendants are "air carriers" under the ADA; to
the contrary, that status is germane (under the circumstances of this case) to only
whether the defendants can prevail on their preemption *defense* to federal-court
jurisdiction over their state-law claims—jurisdiction that the district court
grounded on the Class Action Fairness Act, 28 U.S.C. § 1332(d). *See Wayne v.
DHL Worldwide Express*, 294 F.3d 1179, 1183 (9th Cir. 2002) ("Because
preemption as a defense does not provide a basis for federal jurisdiction, a
separate basis for federal question jurisdiction over Wayne's complaint must exist
before removal was proper. Thus, we need not decide whether the product offered
by DHL constitutes a 'price, route, or service of an air carrier,' 49 U.S.C. §
41713(b), unless we first determine that the district court had jurisdiction over
Wayne's action."); *cf. Parise v. Delta Airlines, Inc.*, 141 F.3d 1463, 1466 (11th
Cir. 1998) ("In resolving the jurisdictional question potentially raised by a statute
such as the ADA, however, it is the cause of action and the underlying state law
on which it is founded that concerns us.").

8

reasonable rates." *Id.* at 267 (alteration in original) (quoting *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995)). And claims relying on such state-law obligations, said the court, are preempted by the ADA. Specifically, it stated: "If Plaintiffs were simply attempting to enforce a specific term of the contract, their claims could proceed . . . . Because they are not, preemption applies." *Id.* at 268 (citation omitted).[5]

In rejecting the plaintiffs' other claims, the court opined further:

> Because Plaintiffs' remaining claims all stem from the belief that these rates were excessive, they too must be dismissed. Their claim for money had and received relies on the failed argument that Defendants' rates were unreasonable . . . . Plaintiffs' request for injunctive and declaratory relief all hinge on the Court finding that Oklahoma law bars Defendants from charging these rates. The ADA therefore preempts these claims as well.

---

[5] The district court elaborated on its reasoning in a helpful manner:

> [P]erhaps all that is certain is there was no supplied price. But to ask the Court, or rather state law, to dictate one is to make the sort of policy judgment that invites ADA preemption. Defendants believe they are entitled to the full charges. Requiring them to accept less because of a policy-based inquiry—what's a reasonable rate for air ambulance services?—necessarily imposes upon them a rate that "the State dictates" rather than one that "the [air carrier] itself undertakes."

Aplts.' App. at 269 (second alteration in original) (quoting *Wolens*, 513 U.S. at 233).

*Id.* at 271 (citation omitted). The court ruled that the plaintiffs could "always lodge their complaints with the [DOT]" and that the "adequacy of this remedy is for Congress, not the courts, to decide." *Id.* at 270.

The court was sympathetic to the plaintiffs' policy arguments but nevertheless found them irrelevant in light of the clear statutory language and caselaw interpreting it:

> [P]erhaps the statute is particularly ill-suited to regulate air ambulance services given the lack of consumer choice in the market for air ambulance services. In fact, finding preemption here might further suppress competition in this industry. But those reasons . . . do not grant the Court leave to discard the Supreme Court's decisions . . . characterizing Plaintiffs' claim as the precise type of state enforcement action preempted by the ADA.

*Id.*[6]

---

[6] In this way, the district court's analysis was quite consistent with the analysis that we subsequently articulated in *Cox*. In that case, we observed that "[t]here is certainly some persuasive force to the amicus argument that federal preemption of state regulations in this field is not serving the congressional purpose of 'further[ing] efficiency, innovation, and low prices' that was a motivating force behind the [ADA]." *Cox*, 868 F.3d at 903 (second alteration in original) (citation omitted) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992)). Nevertheless, we felt obliged to adhere to "the plain language" of the ADA and thus concluded that "[b]ecause air ambulances are included within the broad language of the [ADA's] preemption statute as it is currently written, we must reject Amicus's policy-based reasons for holding that the Wyoming statute and rate schedule should be exempted from federal preemption in this case." *Id.* at 904. Ultimately, we concluded that "[t]he plain language of the [ADA] require[d] us to hold that the Wyoming Worker's Compensation Act and rate schedule are preempted to the extent that they set mandatory fixed rates for reimbursement of air-ambulance claims." *Id.* at 907.

10

The court also rejected the plaintiffs' argument that the defendants were judicially estopped from asserting preemption because, "at least to the Court's knowledge, Defendants have never asserted [that the] contracts are not enforceable and, at any rate, this case does not concern Defendants' collection efforts." *Id.* at 268.

In sum, the district court found that the ADA preempted all of the plaintiffs' substantive claims and, in light of this preemption ruling, the plaintiffs' claim for declaratory relief had no legal foundation. After the court subsequently rejected the plaintiffs' motions to alter or amend the judgment under Federal Rule of Civil Procedure 59 and for leave to amend their complaint under Federal Rule of Civil Procedure 15, the plaintiffs filed this timely appeal.[7]

## II

### A

We review de novo the district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).[8] *See, e.g.*, *Nakkhumpun v. Taylor*, 782 F.3d 1142,

---

[7] The plaintiffs make no meaningful arguments in their appellate briefing challenging the district court's rulings under Rules 59 and 15; therefore, we deem any arguments regarding those rulings to be abandoned and waived. *See, e.g.*, *Folks v. State Farm Mut. Auto. Ins. Co.*, 784 F.3d 730, 737 (10th Cir. 2015); *United States v. Yelloweagle*, 643 F.3d 1275, 1280–83 (10th Cir. 2011); *cf.* Aplees.' Resp. Br. at 53 (acknowledging that "Plaintiffs fail to identify any separate challenge to the district court's denial of their Rule 59 motion" but—apparently out of an abundance of caution—addressing and rejecting such a challenge).

[8] The plaintiffs conclusorily assert—without any citation to
(continued...)

11

1146 (10th Cir. 2015). "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.' A plaintiff must 'nudge[] [his] claims across the line from conceivable to plausible' . . . ." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (third alteration in original) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal is appropriate, however, "on the basis of an affirmative defense like preemption when the law compels that result." *Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1341 (10th Cir. 2015).

**B**

Under the Supremacy Clause of the United States Constitution, federal law may preempt or supersede state law either impliedly or by express intention. *See Hillsborough Cty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985). "'[T]he purpose of Congress is the ultimate touchstone' in every pre-emption case." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (quoting *Retail Clerks Int'l Ass'n, Local 1625 v. Schermerhorn*, 375 U.S. 96, 103 (1963)). Where a statute contains language

---

[8](...continued)
authority—that our standard of review is an abuse of discretion. *See* Aplts.' Opening Br. at 7. We reject this baseless contention; even if the plaintiffs could have mounted a colorable argument to this effect (which they could not), they waived it by their inadequate briefing. *See, e.g.*, *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

expressly preempting state law, "[t]he plain text of the [statute] begins and ends [the] analysis" because "the plain wording of the [statute] . . . necessarily contains the best evidence of Congress' pre-emptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016) (quoting *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 594 (2011)).

The ADA contains an express preemption clause:

> Except as provided in this subsection, a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1). Congress enacted the ADA in 1978 "determining that 'maximum reliance on competitive market forces' would best further 'efficiency, innovation, and low prices'" in the airline-services market. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992) (quoting Pub. L. No. 95-504, § 102(a)(4) & (9)). The preemption clause "ensure[s] that the States [do] not undo federal *de*regulation with regulation of their own." *Id.* (emphasis added).

Three Supreme Court cases guide our interpretation of the preemption provision under § 41713(b)(1). First, in *Morales*, the Court held that the ADA preempted enforcement of state consumer-protection laws against airline advertisements, holding that the disclosure requirements and content restrictions "would have a significant impact upon the airlines' ability to market their product, and hence a significant impact upon the fares they charge." *Id.* at 390. In this connection,

13

the Court observed that "the key phrase, obviously, is 'relating to.' The ordinary meaning of these words is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with,'—and the words thus express a broad pre-emptive purpose." *Id.* at 383 (citation omitted) (quoting *Relate to*, BLACK'S LAW DICTIONARY (5th ed. 1979)).

Next, in *Wolens*, the Court again held that claims under a state consumer-protection act were preempted; however, notably, it also held that *contract* claims arising from an airline's unilateral modification of the terms of a frequent flier program were *not* preempted. 513 U.S. at 222. While the breach-of-contract claim "related to" airline rates, the claim did not seek to vindicate a *state-imposed* obligation but rather to enforce "privately ordered obligations" that were "voluntarily undertaken" by the defendant airline. *Id.* at 228–29 (quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 526 (1992) (plurality opinion)). More specifically, the Court drew a distinction between such private obligations and laws through which "States . . . seek to impose their own public policies or theories of competition or regulation on the operations of an air carrier." *Id.* at 229 n.5.

Finally, in *Northwest, Inc. v. Ginsberg*, 572 U.S. 273 (2014), the Court held that a state *common-law* claim for breach of the implied covenant of good faith and fair dealing was preempted "if it seeks to enlarge the contractual obligations that the parties voluntarily adopt[ed]." *Id.* at 276. The Court reasoned that "the ADA's

14

deregulatory aim can be undermined just as surely by a state common-law rule as it can by a state statute or regulation." *Id.* at 283. The Court, however, limited its preemption holding to claims involving common-law doctrines like Minnesota's; in that regard, it expressly distinguished between states that "use the [common-law] doctrine 'to effectuate the intentions of parties or to protect their reasonable expectations,'" and states like Minnesota that "clearly employ the doctrine to ensure that a party does not 'violate community standards of decency, fairness, or reasonableness.'" *Id.* at 286 (first quoting Steven J. Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith*, 94 HARV. L. REV. 369, 371 (1980), then quoting *Universal Drilling Co., LLC v. R & R Rig Serv., LLC*, 271 P.3d 987, 999 (Wyo. 2012)).

The Court rested its conclusion that Minnesota's common-law doctrine was the impermissible, policy-based type on negative answers to two independent inquiries. First, the Court inquired whether the doctrine was waivable by the contracting parties. It was undisputed that "under Minnesota law parties cannot contract out of the covenant," and the Court reasoned that "[w]hen the law of a State does not authorize parties to free themselves from the covenant, a breach of covenant claim is pre-empted under the reasoning of *Wolens*." *Id.* at 287; *see also id.* at 288 ("A State's implied covenant rules will escape pre-emption only if the law of the relevant State permits an airline to *contract around* those rules in its frequent flyer program agreement, and if an airline's agreement is governed by

15

the law of such a State, the airline can specify that the agreement does not incorporate the covenant." (emphasis added)).

Second, the Court considered—as an "additional, independent basis" for its decision—whether the doctrine applies to every type of contract and also answered this inquiry in the negative. *Id.* at 287. More specifically, it determined that under Minnesota law there was an "exception for employment contracts" and it was "based, in significant part, on 'policy reasons,' and therefore the decision not to exempt other types of contracts must be based on a policy determination [as well]." *Id.* (citation omitted) (quoting *Hunt v. IBM Mid Am. Emps. Fed. Credit Union*, 384 N.W.2d 853, 858 (Minn. 1986)).

## C

At least based on the arguments that the plaintiffs presented to the district court and repeated to us, the district court correctly ruled against the plaintiffs and granted the defendants' motion to dismiss. We uphold the district court's ruling for substantially the reasons stated in its dismissal order. More specifically, the defendants had a sound basis for invoking ADA preemption against the plaintiffs' state-law claims. We are persuaded by the district court's conclusion that an Oklahoma state-law claim that requires a court to determine a reasonable price for air-ambulance services self-evidently affects the price of those services. And, thus, ordinarily the ADA would preempt such claims. Furthermore, the plaintiffs have failed to make an adequate showing that the narrow *Wolens* exception for

16

claims relating to "voluntarily undertaken" contractual obligations applies to save the plaintiffs' claims from preemption. *See Wolens*, 513 U.S. at 222. Recall that this exception applies to common-law contract doctrines but only insofar as the doctrines serve "to effectuate the intentions of parties or to protect their reasonable expectations," rather than to protect "community standards of decency, fairness, or reasonableness." *Ginsberg*, 572 U.S. at 286 (first quoting Burton, *supra*, at 371, then *Universal Drilling Co.*, 271 P.3d at 999). But, based on the plaintiffs' arguments here, we cannot conclude that the *Wolens* exception applies.[9]

_____

[9] In the district court, seeking to invoke the *Wolens* exception, the plaintiffs cited *Ginsberg* and argued that "all Defendants have to do to 'contract around' the rules relating to providing a missing price term is obvious: provide the price term in the contract." Aplts.' App. at 140; *see id.* at 130 ("The contractual analysis is common to all class members, and falls within *Wolens*' exception since Defendants could 'contract around those rules' by supplying the price term in their contracts." (quoting *Ginsberg*, 572 U.S. at 288)). The plaintiffs, however, have not pursued this argument on appeal; indeed, remarkably, they do not even cite to *Ginsberg* in their appellate briefing. Therefore, we are free to deem their contract-around argument abandoned (i.e., waived) and not consider it. *See, e.g.*, *Folks*, 784 F.3d at 737; *Yelloweagle*, 643 F.3d at 1280–83. Even if we were inclined to reach the argument's merits, we note that the plaintiffs seemingly would face an insurmountable obstacle because—as we discuss *infra*—the plaintiffs have failed to identify (before the district court or us) Oklahoma legal doctrines from which we might conclude that the missing price term in the parties' contracts ordinarily would be filled with a reasonable price term and that doing so would effectuate the parties' contractual intent. And, absent such a background principle of Oklahoma law, there would not be anything that the defendants would have the need—much less the incentive—to contract around by specifying a predetermined price for their services. *Cf.* Aplts.' App. at 268 (discussing "the inherent bargain at the heart of every contract" and the plaintiffs' seemingly questionable "assum[ption] the parties still would have contracted had there been a predetermined price").

17

As the district court suggested, the plaintiffs rely on concepts of fairness and reasonableness. In doing so, they lament the absence of price terms in their contracts with defendants and criticize defendants' ultimate after-the-fact charges for their services. Yet, as the district court aptly observed, such "notions [are] found only outside the four corners of a contract." Aplts.' App. at 269. Consequently, we are hard-pressed to see how they are calculated "to effectuate the intentions of parties or to protect their reasonable expectations." *Ginsberg*, 572 U.S. at 286 (quoting Burton, *supra*, at 371). And, more specifically, the plaintiffs have failed to explain how imposing reasonable price terms under Oklahoma law would help to accomplish these ends.[10]

Notably, the plaintiffs failed to direct the district court or us to any Oklahoma legal doctrines from which we might have possibly concluded that the missing price term in the parties' contracts should be filled with a reasonable price term and that, doing so, would be deemed to effectuate the parties' contractual intent. Oklahoma law does appear to have authorities that at least arguably concern such

---

[10] Like the district court in this case, we have previously recognized that ADA preemption may sometimes produce harsh results for potential plaintiffs seeking redress for perceived unfair treatment by air-ambulance carriers. *See Cox*, 868 F.3d at 906–07. Yet, we felt constrained to observe that "[s]uch policy considerations . . . are beyond the purview of [the courts]" and "must be addressed to Congress." *Id.*; *see also Ferrell v. Air EVAC EMS, Inc.*, --- F.3d ----, No. 17-2554, 2018 WL 3886688, at *3 (8th Cir. Aug. 16, 2018) ("We may not refuse to apply ADA preemption merely because we do not believe it would be sound public policy to enforce the statute Congress enacted.").

18

matters.  *See, e.g.*, OKLA. STAT. ANN. tit. 15, § 112 ("When a contract does not determine the amount of the consideration, nor the method by which it is to be ascertained . . . the consideration must be as much money as the object of the contract is reasonably worth."); *accord Braden Winch Co. v. Surface Equip. Co.*, 165 P.2d 640, 643 (Okla. 1945); *see Mirzaie v. Smith Cogneration, Inc.*, 962 P.2d 678, 681 (Okla. Civ. App. 1998) ("According to § 112, it is only when the amount of consideration is unspecified in the contract, or left to the discretion of an interested party, that the statute applies."); *see also* OKLA. STAT. ANN. tit. 15, § 152 (requiring Oklahoma courts to interpret contracts so "as to give effect to the mutual intention of the parties").

But, at no point did the plaintiffs identify those authorities (or any similar ones) to the district court or to us—much less make meaningful arguments applying such authorities to these facts.[11]  Given that we have

---

[11]    The plaintiffs filed supplemental authorities with our Court pursuant to Federal Rule of Appellate Procedure 28(j) on January 15 and March 29, 2018. These submissions do adumbrate some of the possible contours of such meaningful arguments against ADA preemption.  For example, in their January 15 submission, the plaintiffs included an opinion from the federal district court in Montana that denied the motion to dismiss of defendants, air-ambulance carriers; the court appeared to find facially plausible the plaintiffs' allegation that "Defendants knowingly incorporated a consideration term of 'reasonable worth' by their self-imposed and voluntary undertaking to omit a specific consideration term."  *Wagner v. Summit Air Ambulance, LLC*, No. CR-17-57-BU-BMM, 2017 WL 4855391, at *5 (D. Mont. Oct. 26, 2017).  And, in their March 29 submission, the plaintiffs submitted a brief filed by the United States, as an intervenor in litigation between private individual plaintiffs and defendant air-ambulance

(continued...)

consistently deemed it improper to "assume the role of advocate for [a] pro se

litigant," *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see, e.g., Garrett*

---

[11](...continued)
carriers, in which the United States purported to inform the federal district court in Colorado of "the correct analysis for determining whether plaintiffs' claims are preempted" by the ADA. Pls.'-Aplts.' Notice of Supp. Authority, Ex. 1, at 12 (Intervention Mem. of U.S., dated Feb. 28, 2018) (bold-face font and initial capitals omitted). In this connection, the United States opined: "[B]ecause typical state contract law permits the parties 'to contract around' the court's determination of a reasonable essential term simply by executing an express contract specifying that term, the state-law rule that the court supplies missing essential terms ordinarily would not be preempted by the ADA." *Id.* at 17. This supplemental authority does not avail the plaintiffs, however, for two salient reasons. First, a Rule 28(j) letter is not a proper vehicle for raising for the first time new arguments on appeal (which do not otherwise appear in a party's appellate briefing). *See United States v. Kimler*, 335 F.3d 1132, 1138 n.6 (10th Cir. 2003) (declining to consider a party's argument presented "for the first time in a supplemental authority letter pursuant to Rule 28(j)"); *see also United States v. Lindsey*, 389 F.3d 1334, 1335 n.1 (10th Cir. 2004) (refusing "to consider" the defendant's argument "belatedly challenging his criminal sentence" through a Rule 28(j) filing, and noting with reference to *Kimler*, that "[w]e have also previously refused to consider an issue asserted for the first time in a Rule 28(j) letter"). Therefore, even assuming *arguendo* that the plaintiffs' supplemental Rule 28(j) submissions offer helpful clues to arguments that could have helped the plaintiffs to meaningfully respond to the defendants' preemption defense, *but cf. Scarlett v. Air Methods Corp.*, No. 16-cv-02723-RBJ, 2018 WL 2322075, at *9 (D. Colo. May 22, 2018) (distinguishing *Wagner* and "find[ing] that the only agreement that could plausibly be discerned from these facts is one that the Court would impose as an equitable remedy, and . . . that any breach of contract claim based on this implied-in-law contract is *per se* preempted by the ADA," and noting further that "[t]he *Wolens* exception does not fit this situation"), we would still decline to consider such arguments. Second, were we to consider the merits of the supplemental-authority submissions, they still would not rectify the plaintiffs' failure to identify pertinent *Oklahoma* authorities from which they might possibly argue that the missing price term in the parties' contracts should be filled with a reasonable price term and that, doing so, would be deemed to effectuate the parties' contractual intent. Instead of Oklahoma, the supplemental authorities implicate the laws of Montana and Colorado.

*v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) *(*noting that "the court cannot take on the responsibility of serving as the [pro se] litigant's attorney in constructing arguments and searching the record"), we certainly will not adopt the function of advocate and "manufacture" arguments for parties, like the plaintiffs, who are represented by counsel, *Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) (quoting *Sil–Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1513 (10th Cir. 1990)).  Therefore, we deem any arguments that the plaintiffs might have made based on OKLA. STAT. ANN. tit. 15, § 112 (or related Oklahoma authorities) forfeited before the district court and waived here.  *See, e.g.*, *Havens v. Colorado Dep't of Corrs.*, 897 F.3d 1250, 1259 (10th Cir. 2018) ("We conclude that Mr. Havens has forfeited the argument that Title II validly abrogates sovereign immunity as to his claim by failing to raise this argument before the district court, and he has effectively waived the argument on appeal by not arguing under the rubric of plain error."); *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").  Based on the arguments the plaintiffs advanced before the district court and repeated to us on appeal, we cannot reach any other conclusion than the one the district court did: the ADA preempts all of the plaintiffs' claims.[12]

---

[12]     We have no occasion here to definitively opine on whether any

(continued...)

## III

The plaintiffs argue that the defendants are estopped from claiming preemption because the defendants sought to collect money owed by the plaintiffs under their contracts in state court. More specifically, they allege (without record citations) that the defendants previously argued the contracts were valid and enforceable with a price term to be imposed by the courts.

Under the doctrine of judicial estoppel,

> [W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (alteration in original) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). "Judicial estoppel is a doctrine designed 'to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Kaiser v. Bowlen*, 455 F.3d 1197, 1203 (10th Cir. 2006) (quoting *New Hampshire*, 532 U.S. at 749–50).

---

[12](...continued)
Oklahoma laws that would permit missing price terms in contracts to be filled by reasonable price terms would be categorically preempted under the ADA or, instead, fall within the *Wolens* exception to such preemption. We rest our decision solely on the arguments that the plaintiffs elected to present before the district court and to us.

22

We conclude that the plaintiffs' "skeletal" judicial-estoppel arguments, however, are waived. *United States v. Pursley*, 577 F.3d 1204, 1231 n.17 (10th Cir. 2009). In their briefs on appeal, the plaintiffs have not presented a single citation to a relevant state-court case where the defendants allegedly took a contradictory position, nor have they identified specific arguments raised by the defendants in prior judicial proceedings that contradict arguments raised before the district court here. The plaintiffs' failure to adequately support their judicial-estoppel argument effectively waives our review of it. *See United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) ("It is well-settled that '[a]rguments inadequately briefed in the opening brief are waived.'" (alteration in original) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998))).

## IV

For the foregoing reasons, we **AFFIRM** the judgment of the district court.


ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge


23